James E. Nutwell, and others *vs.* George W. Nutwell.

CHANCERY SALES.

*Writ of Habere Facias Possessionem—Act of 1864, ch. 283—Answers in Chancery—Demurrers.*

By a fair and liberal construction of the Act of 1864, ch. 283, it would seem to be clear that the proceedings authorized by that Act, where the sale has been made under a decree of a Court of equity, may be taken in the cause in which the decree was passed, and that a separate and independent proceeding at law is not in such cases necessary or proper.

Such proceeding, as to sales under decrees, is but a substitute for the less summary proceeding, previously resorted to by purchasers, to obtain possession of land purchased under decrees.

The Act does not in any manner lessen or affect the right of the party against whom the proceeding is taken to resist and defeat the application for the writ by showing sufficient cause against it.

A petition was filed by the purchaser at a trustee's sale for a writ of *hab. fac. poss.;* to compel delivery to him of the land sold, and which the parties in possession refused to deliver up to the purchaser. The parties in possession answered the petition, alleging matters which, if true, would make the delivery to the purchaser a fraud upon their rights. The petitioner demurred to the answer, and the demurrer being sustained, on appeal it was Held :

1st. If the parties in possession, acquired title to the land, or to the possession thereof, subsequent to the decree, whether from the purchaser or other person capable of imparting it, such right or title may well be set up in answer to an application to compel them to surrender the possession; and it matters not that such right or title be only of an equitable nature.

2nd. The demurrer to the answer admits its allegations to be true, in which case every principle of justice remonstrates against the issuing of the writ.

3rd. Every application for the writ under this Act involves necessarily, to some extent, an inquiry into the nature and character of the holding by the party sought to be ousted.

Nutwell, *et al. vs.* Nutwell.

4th. The decision on such applications is by no means of a definitive character. It only binds to the extent and effect of granting or refusing the writ. The refusal of the writ will only conclude the appellee as to this particular form of remedy.

APPEAL from the Circuit Court of Anne Arundel County, in Equity.

On the 10th of March, 1871, John E. Hurst and others, creditors of a certain John S. E. Nutwell, of Anne Arundel County, deceased, filed a creditors' bill for the sale of the realty of the said Nutwell, to pay his debts. The administrators and heirs-at-law of the deceased were made parties defendants to the suit. A decree for the sale of the realty was passed, and Frank H. Stockett appointed trustee, who made the sale and returned George W. Nutwell as the purchaser. No cause to the contrary having been shown, the sale was ratified. The accounts of the auditor, distributing proceeds of sale, were filed and ratified, and the purchaser received a deed of the land purchased from the trustee. The children and heirs-at-law of the aforesaid John S. E. Nutwell, deceased, held possession of the land so purchased by George W. Nutwell from the trustee, and refused to deliver up to him possession thereof. Accordingly, on the 22nd of June, 1875, a petition was filed by the purchaser for a writ of *habere facias possessionem,* to obtain possession of the land. The heirs-at-law answered this petition, setting forth in detail facts, which if true, proved that though George W. Nutwell was the nominal purchaser, they (the heirs-at-law) were the real purchasers, and that George W. Nutwell was attempting the perpetration of a fraud in his effort to get possession of the land. To this answer, the petitioner demurred, on the ground that such matters could not be taken into consideration in this proceeding, but would form, if true, proper ground for proceeding against the petitioner by original bill. The demurrer was sustained, and an order passed directing the clerk to issue the writ of *hab. fac. poss.,* as prayed.

In passing this order, the Court below (MILLER, J.,) delivered the following opinion :

" In this case the purchaser has applied, under the Act of 1864, ch. 283, for a writ in the nature of a writ of *habere facias possessionem*, to put him in possession of the land he purchased from the trustee under the decree. To the answer showing cause against this application, the purchaser has demurred, and the demurrer has been argued.

" It appears from the proceedings in the cause, that a bill was filed in the usual form by creditors, for the sale of the real estate of John S. E. Nutwell, deceased, to pay his debts. The administrator and heirs-at-law of the deceased were made parties defendants to the suit. The cause regularly proceeded to decree, the trustee sold the land and reported George W. Nutwell as the purchaser ; the sale was duly ratified, no cause to the contrary having been shown ; accounts were stated distributing the proceeds of sale, which were also duly ratified and confirmed, and the purchaser has received his deed for the land from the trustee. No objection to these proceedings were made by any of the defendants, and so far as the legal title to the land is concerned, it has become completely vested in the purchaser. The parties holding possession and refusing to deliver it up, are the children and heirs-at-law of the deceased, who were defendants to the suit, and whose interests in the land the decree in express terms directed should be sold.

" That the Act of 1864 applies to such a case, I have no doubt. It provides, among other cases, that whenever any lands or tenements should be sold under the decree of any Court of this State, and the debtor named in such decree, or any other person holding under such debtor, or by title subsequent to the date of the decree, shall be in actual possession of the land and tenements sold, and shall fail or refuse to deliver possession of the same to the purchaser thereof, the Court of the county where the lands may be

situated, shall, on application in writing, verified by the
affidavit of the purchaser, unless good cause to the con-
trary be shown by the debtor, or other person concerned,
issue the writ, directing the sheriff to deliver possession of
the said lands and tenements to the purchaser thereof.
This Act is an extension of the Act of 1825, ch. 103,
(Code, Art. 75, sec. 64,) and enlarges the cases in which
a writ of this nature may be issued. Its purpose is the
same, and it must receive the same liberal construction
which has been given by the Courts to the previous law.
In speaking of the Act of 1825, the Court of Appeals, in
*McMechen vs. Mormon,* 8 *G. & J.,* 74, have said: ' This
Act of Assembly is remedial in its character, and, there-
fore, should be liberally construed, in order to carry into
full effect the designs of the Legislature. The evil intended
to be remedied was, that debtors and those claiming under
them after a sale of their lands by the sheriff, held on to
their possession until ousted by the tedious process of ordi-
nary judicial proceedings, thus against every principle of
law and equity, without the ability of making ultimate
indemnity for their wrong doings, depriving purchasers
for years of all enjoyment of the lands they had honestly
paid for, during which interval it is more than probable
that those lands were greatly diminished in value by a
most severe and exhausting cultivation. The necessary
consequence of such a state of things must be the sacrifice
of the interests of creditors by depreciating the value of
that fund from which the payment of their debts is to be
sought.' And in that case the Court held the law applied
where an equitable estate in lands was sold under *fieri
facias.* Upon this liberal principle of construction, I have
no doubt that heirs-at-law of a deceased debtor, leaving
real estate liable to be sold for the payment of his debts,
who are made parties defendants to a creditors' bill for
that purpose, are to be regarded as debtors named in the
decree, within the purview and design of this statute, and

that they, and all persons claiming under them by title subsequent to the date of the decree, are parties meant to be affected by the writ. The object of the law and the writ is to carry into effect as against them, the decree of the Court in a summary way, without putting the purchaser to his ejectment, or other ordinary judicial proceeding. If a case is made out, coming within the provisions of the statute, the Court has no discretion, but is commanded to issue the process, unless good cause be shown to the contrary. What, as a general rule, such ' good cause ' may be, has not, so far as I am aware, been determined by judicial authority ; but I am well satisfied the grounds taken, and the causes shown in the answer to the application, are wholly insufficient. This case has been ended, and the law provides the writ simply for the purpose of carrying into full effect the final and absolute decree of the Court by a summary process, and obviates the necessity of an action of ejectment or other proceedings at law, to enable the purchaser to obtain possession of the property. The title of the purchaser to the land cannot be litigated in such a case, and none of the defences set up in this answer could avail the defendants in an action of ejectment by the purchaser. No rule of equity practice would, as it seems to me, justify or admit of a controversy of this character to be engrafted upon this case at this stage of it, and delivery of possession to be deferred until it could be heard and determined. If these defendants can establish their pretensions, as set forth in this answer, and make out a case for the specific execution of any contract between the purchaser and themselves, respecting this land, or a resulting trust in their favor, or show that the purchaser was their agent, and bought the land for them, or are entitled to equitable relief on any other ground, I am very clearly of opinion, they must seek such relief by original bill. Upon the merits of their case, if presented by such a bill, this is not the place to express an opinion.

With the relief which may be prayed or granted under. such a bill, the order to issue the writ on this application, and even its issual and execution, will in nowise interfere, nor place the defendants, so far as I can see, in any worse position in respect thereto. At all events, I am satisfied no good cause has been shown why the writ should not issue as prayed, and I shall pass an order sustaining the demurrer, and directing it to issue.

"It is thereupon, this 24th day of July, 1875, adjudged and ordered, that the demurrer to the answer of the defendants referred to in the aforegoing opinion be, and the same is hereby, sustained; and it is further adjudged and ordered, that a writ in the nature of a writ of *habere facias possessionem*, be issued by the Clerk of this Court, as prayed in the application therefor by George W. Nutwell, the purchaser of the land from the trustee."

From this decision and the order thereon passed, the respondents appealed.

The record in this case was not sent up to the Court of Appeals until more than *twelve* months after the time of the appeal prayed. Accordingly the appellee filed in the Court of Appeals a motion to dismiss the appeal. This motion the Court overruled, they being of opinion that the delay in sending up the record was not the fault of the appellants.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, ROBINSON and ALVEY, J.

*Alex. B. Hagner*, for appellants.

The order of the 24th day of July, 1875, directing "a writ, in the nature of a writ of *habere facias possessionem*" to issue, should be reversed:

1. Because the petition was filed and the order passed on the *equity* side of the Court, which had no jurisdiction, *as a Court of equity*, to issue the writ.

The writ of *habere facias possessionem* is a judicial writ of a *Court of law*, and never was a process recognized in *Chancery* tribunals. Such was undoubtedly the law before the Act of 1864, ch. 283, (*Morrill vs. Gelston*, 32 *Md.*, 116,) and this Act is an amendment to Art. 75 of the Code of P. G. L., relating to pleading, practice and process in *Courts of law*, and has no application to *Courts of equity*, in which Courts, such subjects are regulated by Art. 16 of the Code.

2. Because the writ ordered by the Court is not the appropriate process to put George W. Nutwell in possession of the lands. The writ of *hab. fac. poss.*, lies to recover possession of a chattel interest or term of which the plaintiff was *formerly possessed*. The proceedings show that Nutwell has never been in *prior possession* of the land and that they are *estates of freehold*. The proper writ to compel the delivery of *freehold* estates recovered is *habere facias seseinam*. 3 *Black. Com.*, 412, *Appendix* iii, *sec.* 4 ; 4 *Com. Dig.*, 112, *Execution, (A. 2), (A. 5)* ; 2 *Bac. Abridg.*, 717, *Execution, ch.* 5 ; *Morrill vs. Gelston*, 32 *Md.*, 116 ; 2 *Ev. Harr.*, 357, 440, 507, 516, 355–6, 443, 508.

3. Because the writ can only issue on the application of the purchaser whenever, 1st, "the debtor named in the decree," or 2nd, "whenever any other person holding under such debtor, by title subsequent to the date of the decree," shall be in possession of the land, &c.

It is insisted that the appellants do not occupy the position of either of the classes of persons thus specially described in the law.

4. Because, if the Court below was authorized to examine into the averments of the answer, there can be no doubt that its allegations, all of which are admitted to be true by the demurrer, do "show good cause to the contrary" in opposition to the "application in writing" of Geo. W. Nutwell. The answer sets forth circumstantially, the facts connected with the entire transaction, and discloses the

details of an abominable fraud attempted to be practised by this uncle against his brother's children. The answer was filed as the proper mode for showing cause why the writ should not be issued, and its sufficiency for that purpose is the present inquiry. The refusal to issue the writ can in no degree prevent Nutwell from offering any proof he may have to disprove these allegations hereafter, upon further proceedings between the parties.

*Frank H. Stockett*, for appellee.

1. The remedy of the appellants for the grievances complained of in their answer, if there be such, must be by *original bill*.

2. Though Courts of equity had not power previous to 1864, to issue the writ of *hab. fac. poss.* in such cases as the present, that power has been *expressly* conferred upon them by the Act of 1864, ch. 283, and that power has been twice sustained by this Court in cases by no means so clear as the one at bar.

(1.) The case of *Dill vs. Satterfield*, 34 *Md.*, 52; and (2.) the case of *Meloy vs. Squires*, 42 *Md.*, 378.

In the last named case, the proceedings were in the Circuit Court of Prince George's County, as a Court of equity. After the sale had been ratified, the possession of the land being refused, the purchaser applied, under the proceedings in that cause, for the writ of *hab. fac. poss.* to the Circuit Court, which was granted, and that order was sustained by this Court on appeal.

These two decisions were made under the provisions of the Act of 1864, ch. 283, which had so greatly enlarged the remedial jurisdiction of Courts of equity in such cases, but those cases were no stronger under that law than the case now presented to this Court. On this point, the appellee refers to the argument of the Judge, in the opinion which the Circuit Court delivered, as conclusive.

ALVEY, J., delivered the opinion of the Court.

By a fair and liberal construction of the Act of 1864, ch. 283, it would seem to be clear that the proceedings authorized by that Act, where the sale has been made under a decree of a Court of equity, may be taken in the cause in which the decree was passed ; and that a separate and independent proceeding at law is not, in such case, necessary or proper. Such proceeding, as to sales under decrees, is but a substitute for the less summary proceeding previously resorted to by purchasers, to obtain possession of land purchased under decrees ; but the Act does not in any manner lessen or affect the right of the party against whom the proceeding is taken to resist and defeat the application for the writ by showing sufficient cause against it.

And it would seem to be equally clear that the heirs-at-law of the original debtor, who were parties to the cause in which the decree was passed, and who retain the possession of the estate devolved on them by descent, may be considered debtors within the reason and purview of the Act. They are debtors in respect of the land descended, and if they do not pay such debts, they will be deprived of the land by proceeding to have it sold for the debts ; and the decree for sale is conclusive against their right to hold the land *under the title derived from the ancestor*, after sale and ratification.

But if the parties in possession, though concluded as to the title descended from their ancestor, acquire title to the land, or to the possession thereof, subsequent to the decree, whether from the purchaser or other person capable of imparting it, such right or title may well be set up in answer to an application to compel them to surrender the possession. And it matters not that such right or title be only of an equitable nature.

In this case, if the party returned as the purchaser by the trustee had made a lease of the land to the parties in

possession, or had entered into an explicit agreement to sell the land to them, and they, being in possession, had, in execution of the agreement, paid a considerable portion of the purchase money, and such dealing between the parties in respect to the land was so clearly proved as to leave no doubt upon the subject, we can hardly suppose it possible that the right so acquired would not afford an answer to an application for the writ to remove the parties from the possession. And if an answer in such case, why not in this? Here, the parties claim to be rightfully in possession, and they are called in to answer the application for the writ in the nature of a writ of *habere facias possessionem*, and to show cause why the writ should not issue. What can be the meaning of the Act, if it cannot be shown that the party applying for the writ is not entitled to the possession as against those holding it? No right is set up by the parties proposed to be removed that has been in any manner determined by the decree, or by any order made in reference to the sale. The appellants allege, that while the appellee has been reported the purchaser of the land, he was so reported by and through an understanding and arrangement with them, that the land should be and was bid in for them, and that they were to retain it, and pay a certain amount for it; and that such understanding has been recognized and acted on for a considerable time by all parties concerned, and that the appellants, in pursuance of and compliance with such understanding, have actually paid a considerable sum on the purchase; and that the attempt to oust them of the possession of the land is a fraud upon their rights. And instead of meeting these allegations by denial or explanation, the appellee has demurred to them, and he thereby admits the allegations as made in the answer. Now, if these allegations are taken as true, as they must be, as the case now stands, every principle of justice would seem to remonstrate against the issuing of the writ.

And it will not do to say that this is not the proper proceeding in which to try the question of right as between the parties. While that may be true as a general proposition, yet the rights of the parties must be considered in order to determine how and in what character, and under what title, the party in possession holds as against the party asking the aid of the Court. *Gowan vs. Sumwalt,* 1 *Gill & J.,* 511; *Cook vs. Brice,* 20 *Md.,* 397. And to show the necessity of this, we may state a case within the very letter of the statute. Let us suppose it to be alleged that the party in possession holds under the debtor by title subsequent to the date of the judgment or decree, under which the land was sold, and such party, upon being called in to show cause against the issuing of the writ against him, should allege that the title under which he holds was not subsequent, but prior to the judgment or decree, or derived from some other source than the debtor; surely, in such case, the writ would not be allowed to go as matter of course, but it would be necessary to determine the question, before issuing the writ, whether the party sought to be ousted really held a title derived from the debtor subsequent to the date of the judgment or decree. Indeed, every application for the writ under the Act necessarily involves, to some extent, an inquiry into the nature and character of the holding by the party sought to be ousted.

But the decision on these applications is by no means of a definitive character. It only binds to the extent and effect of granting or refusing the writ. Parties are entitled to more formal and solemn proceedings for the ultimate and definitive adjudication of their rights. And in this case, the refusal of the writ will in no manner prejudice the appellee in his resort to the ordinary remedies for recovery of the land. If he has the deed from the trustee, he can institute an action of ejectment for the recovery of the land at once, and that will necessitate the filing of a

bill in equity by the appellant for the enforcement of the
understanding set up in the answer to the present applica-
tion. The refusal of the writ now asked for, if it should
be refused upon further disclosure of the facts, will only
conclude the appellee as to this particular form of remedy.

It follows that the order appealed from must be reversed,
and that the demurrer to the appellants' answer be over-
ruled, and the record remanded for further proceedings.

The motion to dismiss the appeal must be overruled.
The delay in sending up the transcript was imputable to
no fault or neglect of the appellants.

> *Order reversed, and*
> *record remanded.*

(Decided 14th June, 1877.)

The following dissenting opinion was delivered by
BOWIE, J.:

The Circuit Court for Anne Arundel County, at April
Term, 1871, in a creditors' suit therein pending, in which
John E. Hurst and others were complainants, and the
appellee, George W. Nutwell, administrator of John Nut-
well, deceased, and the appellants, children and heirs of
said John, were defendants, passed a decree directing the
lands of said deceased, to be sold by a trustee, etc.

The appellee became the purchaser : the sale being
finally ratified and confirmed, he demanded possession of
the appellants, (the terre-tenants, at the date of the
decree,) which being refused, the appellee filed his peti-
tion, verified by affidavit, alleging the foregoing facts,
·and praying an order for a " *writ of habere facias posses-
sionem.*"

The appellants answered the petition, showing cause
why the writ of " *habere* " should not issue.

The appellee demurred to the answer ; which demurrer
being ruled good, the Court, on the 24th of July, 1875,

adjudged and ordered, that a writ in the nature of a writ of *" habere facias possessionem,"* be issued as prayed.

On the 30th of August, 1875, the appellants entered an appeal from the order, directing the writ of *" habere."*

On the 26th September, 1876, the transcript of the record was filed in this Court. A motion is made by the appellee to dismiss the appeal, because the transcript of the record was not brought up within six months from the time of the appeal prayed.

This preliminary motion must be disposed of, before we consider the questions involved in the record.

The appellants contend, that this motion should have been made in the Circuit Court, pursuant to sec. 30 of Art. 5, title appeals, of the Code of Public General Laws as amended by the Act of 1864, ch. 322, and cite the case of *Meloy vs. Squires,* 39 *Md.,* 175, in support of that position.

The language of the thirteenth section of the Code is, "No appeals shall be dismissed, because a copy of the record shall not have been transmitted within the time required by law, if it shall appear *to the Court of Appeals,* that such delay was occasioned by the neglect or omission of the clerk; but if the clerk shall have prepared the record as required by law, and the appellant, or plaintiff in error, shall have neglected or omitted to pay for such record, or by any other neglect or omission on the part of the appellant or plaintiff in error, the said record shall not be sent to the Court of Appeals within nine months after the appeal has been entered or writ of error produced, *the Court from which the appeal was taken, may on motion, strike out the entry* of such appeal, and proceed to execution or other proceedings, as if such appeal had never been entered, and thereafter, no other appeal or writ of error shall be allowed."

By the new rules of this Court, the time for transmitting the record is reduced to six months, (*Vide* 29 *Md.*)

The jurisdiction over the subject of appeals is, by the language of the above section, clearly not confined to the Court from which the appeal is taken, but is conferred on that Court only, under certain circumstances, in which the delay in the transmission of the record within the time prescribed, *is owing to the appellant;* where the delay is occasioned by the omission of the clerk, and it shall so appear *to the Court of Appeals,* the appeal shall not be dismissed.

Thus it is apparent, there is a concurrent jurisdiction in the Court of Appeals, in cases where the clerk's conduct is in question, or the question is, whether the delay is occasioned by the clerk, or the party appealing.

In the case of *Meloy vs. Squires,* the appellee filed a petition in this Court, stating that Meloy had appealed from certain orders or decrees of the Circuit Court for Prince George's County, and had failed to bring up the transcript within six months from the time when the appeal was taken ; and the neglect was in no way owing to the fault of the clerk, and praying said appeal might be docketed in this Court and dismissed.

The appellant had not appeared in this Court, *"non constat"* but he had abandoned the appeal, but the appellee, anxious to anticipate the action of the appellant and forestall him, applied to this Court to docket the appeal and dismiss it *" uno flatu."*

Under this state of facts, this Court announced that the relief sought by the petitioner, may be had by application to the Circuit Court from which the appeal was taken, under the provisions of the Act of Assembly of 1864, ch. 322, (supplement to the Code, page 16.)

In this case, the appellants have not abandoned their appeal, but it is docketed, and the record is filed, placing this Court in possession of all the facts necessary to the determination of the motion.

Numerous instances have occurred, since the passage of the Act of 1864, ch. 322, in which this Court has enter-

tained and decided motions to dismiss appeals, founded on the same reasons as now suggested.  *Mince vs. Tucker,* 37 *Md.,* 362;  *Bowie vs. Neal & Luckett,* 41 *Md.,* 124.

After the prayer for an appeal was entered, a bond purporting to be an appeal bond was filed by the appellants, to which the appellees objected, the clerk approved the bond notwithstanding, and refused to issue the writ of " *habere* " because he had approved the bond.

On the 13th of September, 1875, the appellee filed his petition, stating his objections to the bond, and praying the Court to require a new one.

The controversy about the sufficiency of the appeal bond, was protracted until the 1st of September, 1876, when the Court ordered the appellants, to file a sufficient bond in this case, on or before the 15th of September, 1876.  The new bond being filed, the clerk made out the transcript and certified the same on the 26th September, 1876.

From the facts disclosed by the record, and the statement of the clerk, it would seem the delay in transmitting the record was occasioned by the controversy on the subject of the appeal bond, which, although not legally connected with the appeal, (except as security for the costs,) was supposed by the clerk to be essential to the transcript of the appeal.

Although this was a mistaken view of his duty, it is sufficient to exonerate him from any intentional error, and relieve the appellants from the responsibility and consequences of delay.

To return to the main questions presented by the record.

The appellants admit the sale of the land to the appellee, its final ratification by the Court; that they were the children and heirs of John Nutwell, deceased, and in possession of the lands at the time of the decree, and that they have refused to surrender them to the appellee, and still retain them.

In vindication of their conduct, the appellants charge that the appellee procured the bill to be filed for the sale of their father's real estate, and induced the appellants to acquiesce therein, and to suffer the appellee to become the purchaser, promising to hold the same for their use and benefit, and reconvey the same to them.

Many other allegations imputing "*mala fides*" to the petitioner are made, which are immaterial to the question to be considered and decided.

The points raised by the demurrer are—

1st. Whether the Act of 1874, ch. 283, amending and re-enacting section 64 of Art. 75, title "Pleadings, Practice and Process," applies to sales made in pursuance of decrees by Courts of equity.

2nd. Whether the allegations of the appellants' answer, if true, are good cause for refusing the application for the writ of "*habere facias possessionem.*"

Notwithstanding the very ingenious and forcible argument made by the appellants' counsel, that the amendment applies only to proceedings at law, as indicated by the title of the Act to which it refers, we think the title of an Act, according to the established rules of construction, is not alone sufficient to limit the meaning of its language to subjects included therein, either expressly or impliedly, if the evil to be remedied by the law has a wider range, and is clearly embraced *in the letter and spirit of the enacting clau se.*

The mischief intended to be cured by the Act of 1825, is strongly expressed by this Court, in the case of *McMechen vs. Marman,* 8 *G. & J.,* 74, cited by the learned Judge below, in his opinion, viz., "Debtors and those claiming under them after a sale of their lands by the sheriff, held on to their possession until ousted by the tedious process of ordinary judicial proceedings, thus against every principle of law and equity, without the ability of making ultimate indemnity for their wrong-doings, depriving purchasers

for years of all enjoyment of the lands they had honestly paid for, during which interval it is more than probable that those lands were greatly diminished in value by a most severe and exhausting cultivation. The necessary consequence of such a state of things must be the sacrifice of the interests of creditors, by depreciating the value of the fund from which the payment of their debts is to be sought."

The sacrifices thus vividly depicted as the consequences of delay in securing the fruits of a judgment at law, as necessarily follow delays in consummating sales by virtue of decrees in equity ; *" ubi eadem est ratio, ibi idem est lex."*

The language of the Act of 1864, ch. 283, is " whenever any lands or tenements shall be sold by any sheriff," etc., " or *by any trustee under the decree of any Court of this State, and the debtor "* or any other person holding under said debtor, etc., by title subsequent to the date of the judgment, or decree * * * shall be in possession of the land and tenements sold, and shall fail or refuse to deliver possession of the same to the purchaser thereof, the Judge of the Circuit Court of the county * * * shall on the application in writing, to be verified by the affidavit of the purchaser, or his attorney, unless good cause to the contrary be shown by the debtor, etc., issue a writ in the nature of a writ of *" habere facias possessionem."* The argument in favor of restricting this amendment to Courts of law, drawn from its context, upon the principle of *"noscitur a sociis,"* is overcome by the use of language that can have no meaning or application, unless it includes Courts of equity.

No other Courts in this State have power to appoint trustees to sell real estate for the payment of debts.

So also with regard to the person against whom the writ of *" habere facias"* may be issued. The heir-at-law represents the ancestor, and may be sued in an action of debt, upon a specialty, or judgment rendered against the ancestor ; and real estate descending upon him is made

assets to pay debts generally, in default of personal assets; *"pro hac vice"* he is the debtor, when a bill is filed against him for sale of the lands of which his ancestor died seized or possessed.

The appellants in this case held as debtors or under the debtor, or by title subsequent to the decree, and in either case were subject to be dispossessed, if they refused to submit to the execution of a decree to which they were parties, unless they showed good cause to the contrary.

This brings us to the consideration of the second point, what is good ground for refusing a writ of *" habere facias possessionem."*

As is properly said, the writ of *" habere facias possessionem,"* was not a process known to equity causes, under its ordinary jurisdiction, but is a common law judicial writ resorted to in actions of *ejectione firma* to recover the possession from the defendant who holds over after judgment against him.

But the Legislature has engrafted it upon the chancery powers of the Courts of equity in certain specified cases, with full knowledge of its character. To the writ of *habere facias seisinam,* the sheriff could return that another is tenant of the land by right, for of this there can be no issue taken between them, he has nothing to do but execute the writ. *Bacon's Abrid., Title, Execution,* 707; *Bingham on Execution,* 252.

In the case of *Cooke vs. Brice,* this Court, through its present Chief Judge, said "Ordinarily in summary proceedings of this nature, the question of title is not involved or decided. The purchaser can take only such title as belonged to the judgment debtor; the inquiry is limited to the fact of possession, usually a very simple one, quite unconnected with the question of title. In this case some difficulty grows out of the ambiguous relation the appellant sustained towards the property, and the character in which he held possession. The proof that he resided

upon the premises does not remove the difficulty ; because if he held it only in his character of trustee, and not of his own right, the appellee would not be entitled to the writ. We are therefore compelled to consider the nature of his title in order to determine in what character he held the possession.''

The case in which the foregoing opinion was announced was that of a judgment at law, against a debtor who was tenant under a lease which had expired before the judgment, and who was also trustee for his wife of the estate, out of which the leasehold interest had been created by a former trustee.

The tenancy having expired, the occupant held under another and different title. *Morrill vs. Gelston* determines, nothing else, than that a case occurring before the Act of 1864, ch. 283, does not come within its provisions ; that was a sale by a trustee under a power contained in a mortgage, in an *ex parte* proceeding, and not under a decree.

The averments contained in the appellants' answer constitute good ground for an original bill to set aside the sale as procured by fraud, and an injunction to stay further proceedings until the further order of the Court, but admitting as they do, the title in the complainant as appears by record, they cannot consistently with the principles of law or equity, collaterally annul the former proceedings, by resisting the application for the *habere facias*.

Such a practice would destroy the sanctity of judicial orders and decrees, and the fruition of the benefits of their most deliberate and solemn adjudications, as well as indefinitely defer the end of litigation. For these reasons I think the order appealed from should be affirmed.