CROPPER *v.* GRAVES

[No. 189, September Term, 1957.]

230

*Decided March 28, 1958.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*L. Hollingsworth Pittman,* with whom was *John L. Sanford, Jr.,* on the brief, for appellants.

*William H. Price,* for appellee.

Prescott, J., delivered the opinion of the Court.

The sole question involved in this appeal is whether the appellants, defendants below, showed sufficient cause or controversy to strike out a judgment entered against them by confession and have said controversy submitted to a jury for determination.

On April 16, 1957, the appellee obtained a judgment by confession against the appellants in the Circuit Court for Worcester County. Within the time permitted by Maryland Rule 645 b, the appellants filed a motion to strike out the judgment, alleging that they were entitled to certain credits on the note, which the appellee had refused to give them. The motion was set for hearing, and two witnesses were sworn, one, the appellee, and the other, one of the appellants. After hearing their testimony, the trial judges were of the opinion that no sufficient controversy had been shown by the appellants; so, the appellee's judgment was made final, and the appellants appealed.

Donald Cropper, one of the appellants, testified that he had been engaged in the contracting business for ten years, and during that time had purchased, both for himself and others, concrete and other building materials from the appellee, Henry G. Graves. That when he started doing business with Graves, Graves had agreed to give him a five per cent discount or credit, in the nature of a commission, on all business done with, or referred to, Graves by Cropper, payable at the end of each business year. That Cropper had been indebted to Graves on an open account on and before December 4, 1954, and had been requested by Graves to execute the note, the subject of this controversy, together with Cropper's wife, the other appellant, who was not indebted to Graves, for the balance of Cropper's account at that time. The note in question was executed and delivered to Graves together with a check in partial payment of the account, at Graves' home at about eight or nine o'clock at night on the day the note was dated. At that time, it was agreed between Graves and Cropper that the five per cent discount or credit "would continue to be given and that was to help (him) pay off the note." Cropper repeated that the discount was to apply to the note and that Graves stated this at the time of delivery of the note, in these words: "Don, I'll give you a kickback and apply it to that note." Cropper also testified, without contradiction, that his wife, who was not indebted to Graves, would not have signed the note unless the five

per cent discount or credit would apply to the payment of the note.

Cropper then testified as to several construction projects in and around Ocean City, Maryland, for which he had ordered concrete and other building materials from Graves, after the execution of the note, such as Surf and Sands Motel, Stowaway Motel, Ocean Park Motel, Islander Motel, a drive-in theater, and construction work for Davis & Lynch Fish Co., Inc.; for all of these he should have received a discount or credit which should have been applied to payment of the note in question, but had not.

Cropper further testified as to the construction, for Graves, of a one-car garage at Graves' farm in 1955, and a cowpound or fence in 1956, for which he had not been paid, but for which credit should have been given him on the note. He also stated that he had an open account running with Graves from the time of the execution of the note, but did not know its balance or that he had received any credit on such account for the work done for Graves in 1955 and 1956, or for the discounts on business with, and referred to, Graves since December 4, 1954.

Graves agreed that in 1951 he and Cropper had entered into an arrangement whereby Cropper would be given a discount on his bills and any other business that Cropper might send to him. However, Graves maintained that the bills were to be paid by the fifteenth day of the month following the purchase thereof before the discount would be applied, and that this was his regular trade discount with all contractors. He denied that he had any other or special arrangement with Cropper, but later said that he gave Cropper credit on the different jobs, when the bill was paid. On cross-examination he stated that he "reserved" the right to give a discount even though bills were not paid by the fifteenth of the following month. He, also, testified that the note in question had been delivered to him by Cropper, together with a check, to settle an old open account. Since that time, Cropper had maintained another open account with him, on which a separate suit had been brought for its collection. Credits for discounts had been given Cropper by

Graves on the open account, but not on the note, and Graves stated "(t)here was no arrangement to give him discounts on the note without he kept his running account paid up and that account has never been paid up," and that he had agreed to give Mr. & Mrs. Cropper credit on the note by way of discounts if the open account were paid in full. Graves also testified, in effect, that credit for the cowpound and garage work was to be given on Cropper's open account. Graves denied, emphatically, that the Croppers were entitled to any credit on the note for any materials furnished for any of the construction projects mentioned by Cropper.

Though Graves did not have, at the hearing, his business records pertaining to the various construction projects mentioned above, he admitted that Cropper had constructed the establishments named, and had ordered all, or part, of the materials furnished therefor by Graves. And Graves did not deny that he had received several substantial sums of money in payment for materials, the orders for which Cropper claimed he had obtained.

Although Graves did have Cropper's records and open account present at the hearing, he could not tell from them whether or not anything had been credited thereon to Cropper for any specific construction project and couldn't say that he had given Cropper credit, even on the open account, for the discounts to which Cropper claimed he was entitled.

We have set forth the testimony at some length; because it is necessary to determine from it whether or not the appellants met the burden of showing that there were substantial and sufficient grounds for an actual controversy as to the merits of the case. In the case of *Keiner v. Commerce Trust Co.,* 154 Md. 366, 370, 371, 141 A. 121, this Court stated the rule to be applied in cases of this nature as follows:

> "Necessarily, one making the motion assumes the burden of supporting the facts alleged in it, and as to all matters not going to the merits of the controversy, such as surprise or deceit in the entry of the judgment itself, he must prove such facts by a fair preponderance of the evidence. But as to defenses

going to the merits of the claim upon which the judgment rests, a different rule prevails. In such cases, if the evidence adduced in support of the motion is sufficient to persuade the fair and reasoned judgment of an ordinary man that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the defendant should be deemed to have met the burden of showing that he has a meritorious defence. In other words, if the evidence is such that persons of ordinary judgment and prudence could honestly and fairly draw different inferences from it, one favoring the plaintiff and the other the defendant, the court should not itself decide that conflict, but should submit it to a jury. * * *. 'Courts of law exercise an equitable jurisdiction over judgments entered by confession upon notes and warrants of attorney, and it is necessary to justice that they should liberally exercise that jurisdiction, and may therefore, on application of the defendant, vacate them and permit him to make a defense on the merits, provided the proper showing of a meritorious defense is made.' "

See also *Remsburg v. Baker,* 212 Md. 465, 470, 129 A. 2d 687; *Bolotin v. Selis,* 212 Md. 239, 242, 129 A. 2d 130. Applying the test as laid down in these cases to the facts in the instant one, we think the appellants met the burden placed upon them by law in showing there were substantial and real grounds for an actual controversy as to the merits of the defense. One of the appellants flatly testified as to the existence of an agreement whereby, under certain conditions, he was to earn certain credits upon the note, and he further testified to the occasions when he earned the credits and the parties by whom the materials were purchased. The appellee, while he admits the agreement, has a different version of it, and claims that all credits due to the appellants have been given them. It should be apparent that here is an "actual controversy"; and, while we express no opinion as to its final solution, we are unable to conclude that persons of ordinary

judgment and prudence might not draw different inferences from the evidence, one favoring the appellee and the other the appellants. When this occurs, the defendant is entitled to have the conflict submitted to a jury for its decision. We, therefore, hold the judgment should have been stricken out.

> *Judgment reversed, and case remanded for proceedings consistent with this opinion. The appellee to pay the costs of this appeal and the costs in trial court to abide the result of the further proceedings.*