SEEK ET UX. *v.* WINTERS ET AL., SUBSTITUTED TRUSTEES

[No. 143, September Term, 1973.]

*Decided January 8, 1974.*

716

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Robert H. Reiter*, with whom was *Ruffin A. Brantley* on the brief, for appellants.

*Lance W. Billingsley*, with whom were *Nylen & Gilmore* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellants, Robert Seek *et ux.* (the Seeks) here contend that a trial judge erred in directing issuance of the writ of possession against them. We conclude that he did not err.

This case is a companion to *Seek v. Salladay*, unreported, (No. 142, September Term, 1973, decided January 8, 1974) in that both involve the controversy between the Seeks and David Salladay and wife (the Salladays).

On August 28, 1968, the Salladays executed a deed of trust covering three parcels of land in Montgomery County to secure repayment of a loan from National Mortgage Corporation (National Mortgage). One parcel of land, 316 Linthicum Street (subject property), the one here in controversy, was occupied by the Seeks. Default occurred. Sale was held on April 29, 1969. Filed with the report of sale is a statement from the auctioneers conducting the sale setting forth, among other things, the prior encumbrances subject to which the properties were sold. The second parcel, subject property, was sold subject to a prior lien held by Eutaw Savings Bank of Baltimore said to be of record in Liber 3550, folio 427. National Mortgage purchased all three properties at the sale. The sale was ratified June 24, 1969. The following stipulation was entered into between the attorney for the trustees conducting that sale and the attorney for the Seeks:

> "It is hereby stipulated and agreed that in consideration for the withholding of filing of objection to ratification on order nisi in the above-entitled cause on the part of Robert A. Seek and Joann Seek, his wife, on account of their interest in the property at 316 Linthicum Street, Rockville, Maryland, the trustees will take no action to sell, otherwise dispose, encumber, or take possession of said property until final settlement or disposition of said claims and interests, it being understood that the other properties involved in this proceeding are unaffected by this agreement, and further, that no defense will be made by the trustees based on the failure to file objection to ratification."

On August 18, 1966, John Joseph O'Farrell and Theresa Rivard O'Farrell, his wife, (the O'Farrells) executed a deed of trust on subject property to secure repayment of an indebtedness to Thomas J. Fisher and Company, Incorporated. The note so secured was assigned to Eutaw Savings Bank of Baltimore. The deed of trust is of record in Liber No. 3550, folio 427, one of the Land Record Books for

Montgomery County. Therefore, it is the prior lien referred to in the report of sale relative to the Salladay deed of trust. An action to foreclose that deed of trust was filed on October 31, 1972. Sale was held on October 31, 1972. National Mortgage Corporation was reported as the purchaser. No exceptions were filed to the ratification of sale and it was finally ratified on December 14, 1972.

On January 29, 1973, National Mortgage moved under Maryland Rule 637 for a writ of possession, alleging purchase by it on October 31, 1972, from the substitute trustees; ratification of the sale on December 14, 1972; that at the time of sale and thereafter the Seeks "were in actual possession of the land and property so purchased by Movant, claiming and holding solely by virtue of their right extinguished by the aforesaid Deed of Trust," and that "despite the demand by Movant after receipt of said Deed, they failed and refused and still fail and refuse to deliver possession to Movant." An order was passed directing the Seeks to show cause on or before February 23 why the writ should not be granted. The answer of the Seeks, under oath, filed on February 22 said:

"1. They are in possession of the property known as 316 Linthicum Street, Rockville, Montgomery County, Maryland under claim of equitable title acquired from David and Shirley Salladay, previous owners of said property, who were not made parties to this action, and not the debtors hereunder.

"2. Rule 637(b) of the Maryland Rules provides [sic] for the utilization of the summary procedure provides under this Rule only in specific cases, where possession is sought from the named debtor, his widow, or heirs who are parties to the proceeding, or any person holding under said debtor. The named debtors are John J. O'Farrell and Theresa R. O'Farrell, and we are not holding under said persons.

"3. National Mortgage Corporation, the purchaser herein, and the applicant for the writ of

possession, had previously sought to obtain possession of the same property by filing a similar petition in Equity No. 36,790, at which time, in order to avoid our filing opposition, its attorneys, who are also the attorneys for the purchaser in this proceeding, entered into a stipulation, the original of which was filed in open court in the other proceeding, in which it was agreed that no action would be taken to transfer title to these premises until the relative rights of National Mortgage Corporation and ourselves are judicially determined. Such a determination has never been sought by National Mortgage Corporation, although its attorneys have advised our attorneys that they intended to seek declaratory judgment.

"4. We maintain that our rights are superior to those of National Mortgage Corporation, who acquired their interests with knowledge of our rights and are not purchasers without notice. Questions of title are not susceptible of determination in the summary procedure provided under Rule 637, under which only issues of possession can be determined. *Nutwell v. Nutwell,* 47 Md. 35. Where a party in possession claims title paramount and adverse to the purchaser and all parties to the proceeding under which property is sold, a writ of possession under this rule should not be granted. *Griffith v. Hammond,* 45 Md. 85, *Miller v. Wilson,* 32 Md. 297.

"5. We are ready and willing for a judicial determination to be had as to our rights relative to those of National Mortgage Corporation, although we have sought and shall continue to seek a basis for purchasing the property, as to which we have made very substantial improvements since we acquired equitable title. We were not a party to this proceeding, and thus have not had an opportunity to challenge the validity of the sale ordered herein."

A hearing on the motion was held on April 6. The docket

entries reflect the presence of a court reporter, but if the court heard any testimony, the Seeks have failed to comply with the provisions of Rule 826 c 2 requiring them as the appellants to "promptly file with the clerk of the lower court for inclusion in the record a transcript of all the testimony . . . ." Moreover, if the evidence at that hearing was material to the point now before us, they have failed to comply with Rule 828 b 1 (b) relative to the printing of evidence in the record extract.

Rule 637 was adopted in 1957. It supplanted the procedural provisions of Code (1951) Art. 75, § 99. The statute referred to "a writ in the nature of a writ of *habere facias possessionem.*" It is explained in 2 Poe, *Pleading & Practice* § 618 (Tiffany ed. 1925) that "[t]his writ is the appropriate remedy to compel and enforce obedience to a final judgment in ejectment . . . and has long been in use as a common-law judicial writ. It has, however, a wider scope under several Acts of Assembly . . . ." Further explanation is contained in Miller, *Equity Procedure* § 530 (1897), which states:

> "The act of 1825, ch. 103, sec. 1, first gave authority to the court of chancery to issue a writ in the nature of a writ of habere facias possessionem. The act related only to sales under process of execution; it did not apply to any other process. The act was remedial in its character and was to be liberally construed, although confined to specified cases. The evil intended to be remedied by the act was that debtors and those claiming under them, after a sale of their lands by the sheriff, held on to their possession until ousted by the tedious process of ordinary judicial proceedings, thus depriving purchasers, for years, of the lands they had paid for." *Id.* at 623.

A writ of assistance has been described as "the equitable equivalent to the writ of possession which issues at law — the writ of habere facias possessionem." *See* 7 C.J.S. *Assistance, Writ of* §§ 1, 10 (1937), and 6 Am. Jur. 2d *Assistance, Writ of* §§ 1-2 (1963).

Under Rule 637 a the provision relative to a writ of possession is applicable "where lands . . . [are] sold . . . by a trustee under any voluntary deed of trust . . . ." Under Rule 637 b it is issuable "[i]f . . . the insolvent . . . mortgagor in said deed of trust . . . or any person holding under said . . . insolvent grantor or mortgagor by title subsequent to the . . . deed of trust or mortgage . . . shall be in actual possession of the lands and tenements sold and shall fail to deliver said possession thereof to the purchaser . . . ." It is to be issued "on application in writing, verified by the purchaser, unless good cause to the contrary be shown by the party in actual possession . . . within not less than fifteen days nor more than thirty days from the filing of such application . . . ."

The Seeks contend that Rule 637 is not applicable here because they "were not debtors named in the deed of trust, no[r] holding under such debtors, nor purchasers subsequent to the judgment of foreclosure," stating in their answer, "The named debtors are John J. O'Farrell and Theresa R. O'Farrell, and we are not holding under said persons." It will be noted that there is no precise statement as to the source of their title if they do not hold under the O'Farrells. As we noted earlier in this opinion, the Seeks claim equitable title from the Salladays. The Salladay deed of trust was junior to the one here foreclosed, from which the trial court could legitimately infer that the Seeks hold under the O'Farrells.

We have said relative to motions for summary judgment that "an unequivocal denial of liability, unsupported by an assertion of facts admissible in evidence, is not enough for the defendant to prevail. If he is to do so, he must show with some precision that there is a genuine dispute as to a material fact, by asserting facts which would be admissible in evidence." *James v. Tyler*, 269 Md. 48, 54-55, 304 A. 2d 256 (1973).

Relative to striking out a judgment by confession, Judge Hammond said for the Court in *Stankovich v. Lehman*, 230 Md. 426, 187 A. 2d 309 (1963):

> "To be successful in moving to strike a judgment
> by confession, one must adduce evidence in support

of his motion sufficient to persuade the fair and reasoned judgment of an ordinary man that there are substantial and sufficient grounds for an actual controversy as to the merits of the case. If he does so, he is deemed to have met the burden of showing he has a meritorious defense, without the necessity of showing he will eventually prevail. This is to say that if the evidence is such that persons of ordinary judgment and prudence could fairly draw different inferences from it, the controversy should not be decided as a matter of law but instead should be submitted to a trier of fact. If a meritorious defense is made out (by affidavits or testimony, *Johnson v. Phillips*, [143 Md. 16, 122 A. 7 (1923)]), the Court should liberally exercise its equitable jurisdiction over judgments entered by confession and, on application of a defendant who prima facie shows such defense, vacate the judgment to permit a trial on the merits. *Cropper v. Graves*, 216 Md. 229; *Remsburg v. Baker*, 212 Md. 465, 470; *Keiner v. Commerce Trust Co.*, 154 Md. 366, 370-371." *Id.* at 432.

In *Schaefer v. Amicable P. L. & L. Co.*, 53 Md. 83 (1880), our predecessors said relative to proceedings under the statutory predecessor of the present rule:

"To show good cause in the sense of the statute, means, we apprehend, not only to object in writing, but to answer in solemn form, according to the usages and practice of the court in which the proceedings are pending under the sanction of an oath, (if in equity,) the allegations of the petition, that the court may have some warrant for withholding the relief, it is commanded to give; otherwise, a proceeding intended to be summary in its nature, might be protracted indefinitely, and the law virtually evaded. It implies also in this connection, not only averments, but evidence to sustain them, constituting good cause to the contrary.

"The *prima facie* title of the purchaser to possession established by the record, must be overcome by proof to the contrary. The *onus probandi* is on the respondent, by virtue of the statute." *Id.* at 88-89.

In 6 Am. Jur. 2d *Assistance, Writ of* § 15 (1963), relative to an answer to a petition for a writ of assistance, it is said:

"The answer must set forth a clear and distinct statement of the facts that constitute the ground of the defense, so that they may be understood by the petitioner and the court. If it shows no right on the part of the occupant to contest the petitioner's right to possession, it may be disregarded and the writ awarded." *Id.* at 422.

To the same effect *see* C.J.S. *Assistance, Writ of* § 13 b (1937), and *West 132 Ft. et al. v. City of Orlando,* 80 Fla. 233, 238, 86 So. 197 (1920).

Judge Moorman properly ruled against the Seeks because neither in the answer to the order to show cause nor in any record provided us by the Seeks does there appear "a clear and distinct statement of ... facts" indicative of the fact that the Salladays did not take title subject to the deed of trust from the O'Farrells. Obviously, if the O'Farrells were predecessors in title to the Salladays, then the rule was properly invoked since the Seeks claim under the Salladays.

The contentions of the Seeks that National Mortgage, as the purchaser at the foreclosure sale, is "estopped by reason of its actions from seeking possession of the property occupied by the [Seeks] under claim of title"; that it is "guilty of unclean hands and therefore not in a position to invoke equitable relief, by reason of its dealings with the [Seeks]"; and that "the seeking of a writ of possession [is] a violation of the stipulation entered into by the attorneys for the parties" are without merit. First of all, there was no stipulation between attorneys for the Seeks and attorneys for National Mortgage. The stipulation was between attorneys for the Seeks and attorneys for the trustees making the sale to National Mortgage. Secondly, National

Mortgage had a right to protect its interest in the land by purchasing at the foreclosure sale held under a prior lien. No exceptions were filed to the sale; thus, we conclude that the sale was fairly held in every respect. National Mortgage stood in no different position than any other person who might have purchased at that sale under what presumably was a first lien on the property. When it acquired title at the sale under that lien, it then stood in the place of the O'Farrells, having acquired all their right, title and interest.

The contentions of the Seeks that invoking Rule 637 deprives them "of the right to have their claim of title judicially determined prior to their being evicted" and thus "the rule [is] violative of the Constitutions of the United States and the State of Maryland" is likewise without merit. They were duly notified by service of an order of the Circuit Court for Montgomery County to "show cause on or before the 23rd day of February, 1973, why the Motion for Writ of Possession should not be granted . . . ." If they were in a position to prove that the O'Farrells were not predecessors in title to the Salladays, then it was incumbent upon them to set forth this fact with particularity in their answer and to adduce evidence to that effect at the hearing on the motion. This they did not do. Thus, they may not now contend that they have been deprived of their constitutional rights.

*Order affirmed; appellants to pay the costs.*