THE ORIENT MUTUAL INSURANCE COMPANY *vs.* R. SNOWDEN ANDREWS AND MILO W. LOCKE, trading as ANDREWS & LOCKE.

*Policy of marine Insurance—Construction of Act of 1864, ch. 6, regulating Practice in certain cases in Baltimore City.*

Although a policy of marine insurance, may be regarded as a contract for indemnity, yet if the measure of the indemnity, or the certain means of its ascertainment after loss, is agreed upon in the instrument, it falls within the Act of 1864, ch. 6; and in an action brought upon it an affidavit of the loss may be made, and a judgment by default for want of a verified plea, may be taken under said Act:

APPEAL from the Baltimore City Court.

This was an action on a policy of marine insurance, brought by the appellees against the appellant. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*David Stewart,* for the appellant.

The Act of 1864, ch. 6, does not apply to claims not subject to attachment; and for a partial loss under an insurance policy, an attachment will not lie. *State, use of Bouldin vs. Steibel, et al.,* 31 *Md.,* 34, 37 ; *McKean vs. Turner,* 45 *N. H.,* 203, 204.

This Act does not apply to a contract of indemnity, and a contract of insurance is a contract of indemnity. *State, use of Bouldin vs. Steibel, et al.,* 31 *Md.,* 34, 36 ; *Keen, et al. vs. Whittington & Co.,* 40 *Md.,* 489, 496 ; 3 *Sutherland on Damages,* 81.

The amount recoverable on the policy of insurance is not measured by the contract itself; the amount is not named, nor can it be arrived at by reference or calculation, but it depends upon a great number of facts, which are neither agreed to nor established—while the cases all decide that the Act applies only to contracts which themselves afford a certain measure for determining the amount recoverable. *Warwick vs. Chase, et al., Garnishees, &c.,* 23 *Md.,* 154, 162, and the other cases.

The true amount due by the defendant cannot be safely and properly sworn to by the plaintiffs; it is based on a great number of facts, and upon special calculations and apportionments; many of the facts are not such as are within the knowledge of the plaintiffs; many others of the facts are not matters of knowledge, but matters of judgment, opinion and discretion, which can be established only by agreement or the finding of a jury. But the cases say that this Act does not apply to any claim which cannot be safely and properly sworn to by the plaintiff. *Smithson & Owens vs. U. S. Tel. Co.,* 29 *Md.,* 162, 165, and the other cases.

This Act applies only to claims for liquidated damages, and it is well settled that no claim could be more unliquidated than a claim for a partial loss under a marine insurance policy. *State, use of Bouldin vs. Steibel, et al.,* 31 *Md.,* 34, 37; *Smithson & Owens vs. U. S. Tel. Co.,* 29 *Md.,* 162, 165; *Waterman on Set-Off, sec.* 316, *page* 351; *Diehl vs. General Mutual Ins. Co.,* 1 *Sandford S. C. N. Y.,* 257; *Holbrook vs. Receivers of American Fire Ins. Co.,* 6 *Paige,* 220, 223; *Gordon vs. Bowne,* 2 *Johnson,* 150, 155; *McKean vs. Turner,* 45 *N. H.,* 203, 204.

*Richard S. Culbreth,* for the appellees.

The principle is now well settled, that it is sufficient if the contract provides for a mode or standard by which the damages can be ascertained, the test being, can the

claim be sworn to? *Wilson vs. Wilson, Garnishee*, 8 *Gill*, 192 ; *Warwick vs. Chase, et al., Garnishees, &c.*, 23 *Md.*, 154 ; *Fisher vs. Consequa*, 2 *Washington C. C.*, 382 ; *Clark's Ex'rs vs. Wilson*, 3 *Washington C. C.*, 562.

Or if the declaration discloses a cause of action by which the amount claimed is certain and liquidated. *McAllister vs. Eichengreen, et al.*, 34 *Md.*, 54. The policy in question does contain such a standard or measure.

IRVING, J., delivered the opinion of the Court.

The question presented by this appeal is whether a judgment by default, rendered in favor of the appellees, and which was extended for amount ascertained, and final judgment entered, ought to have been stricken out on the application of the appellant in the Court below. The Court refused to strike out.

It is contended by the appellant, that the cause of action of the appellees did not give them a right to the judgment by default, under the Act of 1864, chap. 6, regulating practice in certain cases in Baltimore City, for the want of a sworn plea, filed to the rule day by the appellant; because it is urged that the cause of action contains no certain measure of what is due the appellees on their policy of insurance issued by the appellant, to which the appellees could safely swear.

By the sixth section of the Act of 1864, chap. 6, it is provided that every suit where the cause of action is a contract, whether in writing or not, or whether express or implied, shall stand for judgment or trial on the first day of the term, or at the return day next succeeding the entry of appearance of the defendant, which ever shall first happen, unless the time shall be extended by the Court on cause shown.

By the seventh section if the plaintiff makes affidavit, or affirmation to his claim on filing his declaration at the bringing of his action, in accordance with section eight of

the Act, he is entitled to judgment on the first day of the term, or at the return day next succeeding the appearance of the defendant, whichever shall first happen or occur, unless the defendant files a good plea in defence verified by himself or some one on his behalf, by oath or affirmation. The eighth section requires the affidavit or affirmation of amount due, over and above all discounts, to accompany the declaration at the bringing of the suit; and that the cause of action on which the claim arises, shall also be filed.

In *State, use of Bouldin vs. Steibel,* 31 *Md.,* 37, this Court said, that this eighth section is substantially the same as that of the attachment law in section 4, Article 10 of the Code ; and that the general rule is, that unliquidated damages cannot be recovered by attachment, unless the *contract itself* affords a certain measure or standard for determining the amount of the damages, because in such case the amount of·indebtedness cannot be averred by affidavit.

The true test therefore *is,* whether the claim can be sworn to. *Wilson vs. Wilson,* 8 *Gill,* 192 ; *Warwick vs. Chase, et al.,* 23 *Md.,* 154 ; *Fisher vs. Consequa,* 2 *Washing C. C. Reports,* 382 ; *Clark's Ex'rs vs. Wilson,* 3 *Wash. C. C.,* 562 ; *Williams, Garnishee vs. Jones,* 38 *Md.,* 555. In the last cited case the suit was upon a bond for the payment of money, but the precise sum the bond was intended to secure was not stated in the condition, but as the elements or data necessary to enable the amount due to be ascertained were in the instrument, it was held sufficient to justify the plaintiff in verifying the same by his oath.

The appellees contend that the· policy of insurance, which is their cause of action, and was filed with their declaration, together with an affidavit of the amount of their loss, does contain a certain measure and standard for ascertaining their loss, so that the same could be veri-

fied by them, by their oath as was done.   The policy was
for $4500, on two engines and boilers, hoisting cranes and
cargo of stone.

The risk was "confined to the Delaware River and bay
and tributary waters as far as the Breakwater."   The
clauses of the policy relied on as supplying a certain mea-
sure and method of ascertaining the loss sustained and
payable by the insurers read as follows :  " Immediate
notice of the occurrence of all losses shall be given to this
company by the assured ; and within thirty days from the
time the same may happen, the said assured shall deliver to
said company proof of loss and interest, and as particular
an account as the nature of the case will admit, stating
the causes, if known, the extent of loss, and the nature of
the interest of assured in the property ; also what other
insurance or insurances (if any) there was on the prop-
erty at the time of said loss ; which statement shall be in
writing, signed by the assured and verified by his or
their oath, and so much of said statement as relates to
the cause, nature and extent of said loss or damage shall
be verified also by the master of said boat or vessel, or of
some other person or persons having immediate charge
thereof at the time the same did happen, otherwise this
company will not be liable under this policy ; and the
amount of the loss shall be ascertained by the opening of
packages when necessary, by a competent person, and sep-
arating the sound from the damaged portion, this com-
pany being liable for the loss on the damaged portion
only, which shall be ascertained by appraisement by dis-
interested persons, or by a sale at auction as this com-
pany may prefer.   The said loss or damage to be esti-
mated according to the true and actual cash value of the
said property at the place of destination on the day of the
disaster ; and on the property not forwarded to its desti-
nation, the said loss or damage to be ascertained in the
same manner, and the freight from the place of disaster

to the place of destination deducted. In all cases of loss or damage there shall be deducted in lieu of average the sum of one hundred dollars on salt, fifty dollars on flour, and seventy-five dollars on losses on grain and general merchandise. In the case of wet grain, the dry portion of the boat (if any) to be considered as a sample of the condition and quality of the cargo when shipped." " And the said Orient Mutual Insurance Company do hereby undertake and agree to make good, and satisfy unto the assured the loss or damage on the said goods or merchandise so laden as aforesaid, as shall happen to said goods or merchandise while at risk under this policy from causes or casualties not excepted as aforesaid; provided, the sum insured is equal to or exceeds the value of the property at risk on the day of the disaster. Should the sum insured be less than the said value of the property, then the company will pay such proportion of the said loss as the amount hereby insured bears to the sound value of the property so insured. Losses payable sixty days after proofs of loss and interest have been made by the assured, and filed with the Orient Mutual Insurance Company, and in settlement all unpaid premiums or other debts due the said Insurance Company, are to be deducted."

" And provided further, and it is hereby agreed, that if the said assured shall have already made any other insurance upon the property aforesaid, not notified to this corporation, and mentioned in or endorsed upon this policy, then this insurance shall be void and of no effect; and in case of any other insurance on the property hereby insured, by parties other than the assured, whether prior or subsequent to the date of this policy, the assured shall not, in case of loss or damage, be entitled to demand or receive of this company any portion of the loss or damage sustained, unless said other insurance is insufficient to cover the value of the property at risk, in which event this policy will attach and co-insure to the amount of said deficiency, not exceeding the sum insured herein."

Orient Mutual Ins. Co. *vs.* Andrews and Locke.

" Losses of averages of each trip or voyage to be adjusted and settled separately; all sacrifices and expenses for the benefit of, or to save the vessel and cargo laden on board, and insured under this policy, arising from or necessitated by a peril insured against in this policy, are to be apportioned and paid by the several interests of vessel, freight and cargo, according to the law and custom of general average. In case this company should pay the whole of such general average, expenses or losses, the proportion thereof due from the vessel and freight, is to be guaranteed and paid to the company by the assured. Such contribution as may be due from this company toward such general average charges or losses, is to be paid without deduction of average." There are many other clauses in the policy, but they do not bear on the question whether the policy contains data for the certain measurement of the loss sustained by the assured. They mainly are conditions upon which matters of defence against claim for loss might arise.

It is very certain that by this policy the appellant has prescribed a method of ascertaining the amount of the loss of which it was to be promptly notified by the assured after suffering it. That amount ascertained in the way the policy prescribed, is also by the very terms of the policy to be verified by the oath of the assured. If the loss was thereby so certainly ascertainable, that the assured could swear thereto for the purpose of notifying the appellants of the claim they were expected to pay within the sixty days the policy promised should be done, it is difficult to see why, if the company failed to pay, the assured could not with equal propriety and safety swear to his claim, when he brought suit on it. If it had not been considered, that the means of ascertainment and calculation of the loss contained in the policy were sufficiently definite and certain to justify the claimant in swearing to the same as proof of loss and notification to the company

of the extent of the loss, it was under a contract to pay
and make good within sixty days from the receipt of such
proofs, it would hardly have been required. We do not
mean, however, to be understood as regarding this re-
quirement of the policy as conclusive of the question.
That must depend upon whether the policy does supply
a certain means of ascertaining the loss.

We cannot see that the facts of this case materially
distinguish it from the cases of *Wilson vs. Wilson*, 8 *Gill*,
192, and *Fisher vs. Consequa*, 2 *Wash. C. C.*, 382. In
*Wilson vs. Wilson*, if the flour to be delivered should not
pass superfine, the difference in worth between it and
superfine, "as is customary between the different qualities
of flour, in the place where the flour may be inspected,"
was the measure of damages. The attachment was sus-
tained. Yet the plaintiff had to ascertain what was the
"*customary difference*" in values, and having ascertained
it, swore to it as he understood it. It would have been
entirely competent for the defendant to have shown that
the plaintiff's information was wrong, and that his claim
was too much; but that was matter of defence. Upon
the information he received according to the measure sup-
plied by the contract, he was held justified in making his
affidavit for attachment. In *Fisher vs. Consequa*, 2 *Wash.
C. C.*, 387, tea of a certain quality, and suited to a par-
ticular market, was to be delivered the plaintiff, and on
failure to deliver such tea, the defendant was to pay the
difference between the tea delivered and that which was
to be delivered. The plaintiff had to ascertain the qual-
ity suited for the particular market, and whether the tea
delivered did suit, and what, in that market, the differ-
ence in value of the two teas was. Yet, the Court held
that it was competent for the plaintiff, upon the informa-
tion and knowledge he had or acquired, to make the affi-
davit as to the difference in value which was due him.
The principle of these cases does not seem to have been

disturbed; on the contrary, they have been frequently approved. They are approved in *Warwick vs. Chase*, 23 *Md.*, 159, where the Court held, that the contract there involved, did not contain a certain standard or measure for ascertaining the damages plaintiff had sustained, for the want of which agreement as to how the damages were to be measured, they were wholly unliquidated.

If, *by the agreement of the parties,* a standard or method for ascertaining the damages suffered is certainly fixed, then they can no longer be regarded as wholly unliquidated, so as to defeat an attachment based on the amount ascertained in accordance with the contract, and sworn to by the plaintiff. This we understand to be the doctrine of *McAllister v. Eichengreen, et · al.*, 34 *Md.*, 54, and all the Maryland authorities. The defendant may contest the propriety of the demand made, and his liability at all, but that right does not affect the question whether the contract supplies the plaintiff a measure of damages to which he can swear, which is the test of this case falling within the provisions of the Act of 1864, ch. 6.

Although the policy may be regarded, as it is contended, as a contract for indemnity, yet if the measure of the indemnity or the certain means of its ascertainment after loss, is agreed on in the instrument, then we think the case may properly fall within the provisions of the Act of 1864. Looking to the application of the rule given in the contract to the loss in this particular instance, there would seem to be no difficulty in the way of making the affidavit to the loss. The stone saved was from its nature uninjured. That which was lost had a value, the measure of which was fixed by the policy. The engines, boilers and cranes were partially damaged, the extent thereof, and what it would cost to repair were certainly ascertainable by the method supplied by the policy. The actual cost of saving that which was saved was paid by the plaintiffs, and the proportion of the defendant was fixed in the in-

strument. As already stated, the oath of the plaintiffs to the loss and its amount is required by the policy as preliminary to payment. This was made the basis of payment if the insurers chose to pay and not deny its correctness. Whilst they were at liberty to rely on the failure of the plaintiffs faithfully to pursue the terms of the policy in ascertaining the loss, or to defend on the ground of negligence of plaintiffs occasioning the loss or for misrepresentation, or the application of some other clause of the policy to defeat the claim, the *bona fides* and genuineness of such defence would have to be sworn to in order to entitle the defendants to be heard, if the case falls under the Act of 1864, and the plaintiffs' claim was properly sworn to, and might be so under the law. The plaintiffs when they brought their suit filed their declaration, and with it the policy, their cause of action, with an affidavit of the amount claimed to be due under it, and also the appraisement made by the adjusters. All this care in the bringing of their action, was or ought to have been notice to the defendant that the provisions of the Act of 1864, were invoked. This was followed by motion for default for want of appearance. Appearance was made and plea was filed, but without oath as the statute required. Thereby the plaintiffs acquired the right, under the statute, to a judgment by default, which was entered, and for the striking out of which no sufficient reason has been shown. Whether the Court below had adequate or proper evidence for extending the judgment, as was done, is not before us, and the case in 10 *Johnson*, 498, has no application. There was no appeal from the final judgment, but only from the overruling the motion to strike out the judgment by default. If that was justifiably entered, it was admitted by appellant that the judgment, as extended, must stand.

*Judgment affirmed.*

(Decided 4th January, 1887.)