## THE CONTINENTAL INSURANCE COMPANY *vs.* FRANK M. REYNOLDS.

*Fire Insurance—Waiver of Provision Requiring Endorsement of Change on Policy and of Stipulation as to Time of Bringing Suit—Suit on Policy Under the Practice Act.*

A fire insurance policy provided that the insured might take out other insurance to the amount of $1,500, also that no officer or agent of the company should have the power to waive any of the conditions, unless such waiver be written upon or attached to the policy. Upon receipt of the policy, the insured took it to the company's agent and said that he had other insurance in excess of $1,500 and requested that a change be made. Thereupon, the agent erased the figures $1,500 in the policy so as to make it read, "other insurance permitted without notice until required." *Held*, that the agent had the power to waive this provision and that the insurer is equitably estopped to allege that the waiver was invalid because not written on the policy.

A policy stipulated that "the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of loss shall have been received by this company." *Held*, that where the insurer after claim made, demands the production by the insured of the contract showing the amount of other insurance which he was permitted to have when it knows that there was no such contract, and where it practically refuses to pay the loss, there was a waiver of this stipulation.

A suit on a fire insurance policy, when the assured can make affidavit as to the amount of the loss, may be brought under the Practice Act 1886, chap. 184.

*Decided December 4th, 1907.*

Appeal from the Superior Court, of Baltimore City (SHARP, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*S. Johnson Poe* and *Edgar Allan Poe*, for the appellant.

*John C. Rose* and *John L. G. Lee*, for the appellee.

BURKE, J., delivered the opinion of the Court.

Frank M. Reynolds sued the Continental Insurance Company, a corporation, in the Superior Court of Baltimore City, and from the judgment entered against it in that action, it has prosecuted this appeal. The suit was in *assumpsit*, and the declaration contained the six common counts, and one special count, which alleged that on the 16th day of January, 1906, the defendant by its contract, commonly called an insurance policy agreed to insure the plaintiff in the sum of $1,000 against loss by fire to certain property located at Level, in Harford County; and that a fire occurred on February 20th, 1906, and destroyed said property, and caused a loss of $908.08- 8-9 to the plaintiff for which he has duly submitted his proof of loss, and the plaintiff has demanded payment, and has been and still is refused payment.

The suit was instituted on the 11th day of May, 1906, and on the 23rd of that month the defendant filed the two general issue pleas, upon which issue was joined. One question raised upon the record relates to the premature bringing of the suit, and it is admitted that if this contention of the defendant is well founded no recovery can be had on the policy, as by its terms no suit can be maintained upon it after the lapse of twelve months from the date of the fire.

Suit was brought under the Speedy Judgment Act in force in Baltimore City, and the policy sued on was attached to the declaration. Nothing further was done until the 13th day of February, 1907 when the defendant filed four additional pleas numbered 3, 4, 5 and 6. The 3rd, 4th and 5th pleas were

based upon a clause in the policy known as "The Iron Safe Clause" and set out the failure of the plaintiff to comply with the requirements of that clause. The plaintiff in its replication traversed these pleas, and issue was joined thereon.

The defendant's sixth plea alleged that by the terms and conditions of the policy sued on the plaintiff was entitled to take out another policy of insurance of fifteen hundred dollars in addition to the thousand dollars mentioned in said policy without notice until required, and that after the policy sued on was delivered to the plaintiff, the plaintiff without notice to or consent of the defendant did take out additional insurance to an extent greater than the fifteen hundred dollars allowed by the terms of said policy, to wit: the sum of thirty five hundred dollars additional, and that by reason thereof said policy became null and void. This plea was traversed by the plaintiff and issue was joined thereon. The defendant then interposed a seventh plea which alleged that after the delivery of the policy sued on the same was altered in a material respect without the consent of the defendant and without notice to the defendant, to wit: the words "1,500 other" which were on the said policy when the same was issued, were changed as follows: The figures $1,500 were stricken out in red ink, and the letter o was changed in red ink to the letter O. This plea was likewise traversed by the plaintiff.

The plaintiff then filed a second replication to the defendant's sixth and seventh pleas which averred that at the time of the issuing of the policy sued on the defendant had notice that the plaintiff had applied for additional insurance in other companies to the aggregate amount of $3,500, and that his application therefor had been accepted, and that the policies for said additional insurance had either been issued to the plaintiff, or would be issued to him within two or three days from the date of the issue of the policy sued on in this case. To this replication the defendant filed two rejoinders. The first was a traverse of its allegations, and the second was in these words: "The defendant for a second rejoinder to the plaintiff's replication to the defendant's sixth and seventh pleas,

say's that the policy sued on contains the following conditions, viz:   This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provision or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.   And the defendant in fact says that the said alleged privilege or permission for the additional insurance mentioned in said replication never was endorsed upon the policy sued on, nor written or attached thereto—as will appear upon inspection of said policy filed with the declaration."   This rejoinder was demurred to by the plaintiff, and the demurrer was sustained.

This ruling raises the most important question in the case, but one which we think has been settled by adjudged cases in this Court.   The determination of this question in favor of the plaintiff, in the view we take of the case, will free it in many respects of all difficulty.   The demurrer was properly sustained, because the facts therein alleged do not constitute either at law, or in equity an answer to the matters alleged in the replication.   Assuming the truth of every fact alleged in this rejoinder, as we are required to do under the demurrer, it interposes no bar to the plaintiff's right to recover under the issues made by the pleading.   In the *National Fire Insurance Company* v. *Crane*, 16 Md. 260, which was a suit in equity on a fire insurance policy which provided that if the assured had taken out any other insurance on the property, the policy should be void, unless he notified the same to the company, and caused the same to be endorsed upon the policy.

the Court dealing with the effect of this provision upon the plaintiff's right to recover under the facts in evidence, said: "Whatever effect the want of such an endorsement may have at law, in an action on a policy, we think it cannot be urged in a Court of equity, in a cause otherwise free from objection. The Judge below has correctly stated the law on the subject. The endorsement could only have been made by the company. If it be omitted, who is to blame? Certainly not the assured. These policies contain many stipulations—some of them operating as conditions precedent—for the benefit of the company, and few for that of the assured. It is too common for application to be met, an adjustment refused on frivolous and unjust pretenses, in order to defeat fair claims, on contracts of which good faith is the very essence, and we think it would promote the interest of insurance companies, and tend to a higher state of morals in business transactions, if they would exhibit more readiness to settle demands upon them, than, as we discover from numerous reported cases on the subject, appears to be usual with them. In this case the president of the company dictated the application himself; the prior insurance was made known to him; the parties relied upon him; they never went to the office of the company, he came to the counting house of the complainant, seeking the risk, and after hearing all they had to say on the subject, he departed, and soon after sent the policy, and received the premium, his clerk saying that it was all right; the only defect, however, being that the company had omitted part of its own duty in not endorsing the former insurance. In such a case we are called upon to say that the party is without remedy; on the contrary, we think it would be a reproach to the jurisprudence of the State, if this company were discharged from their contract on such grounds. There is a distinction in the cases where the preparation of an instrument belongs to the party to become liable under it; he ought to be dealt with more strictly. 19 *Ves.* 257. Insurance contracts are within this principle, and equity will interpose not only in cases of fraud, but also of mistake, where a policy is drawn up in form different from

the application, or anything is omitted which it is the duty of the company to insert, or endorse on the instrument."

The principle of equitable estoppel announced in that case was applied at law in *Maryland Fire Insurance Company* v. *Gusdorf*, 43 Md. 506. In this case the Court said that since the decision in Crane's case: "The doctrine of equitable estoppel has, especially in insurance cases, been extended and applied at law as well as in equity, by adjudication of the Courts of last resort in many other States, and the current and weight of judicial precedent and authority in this country, have established the proposition that, in such cases, the estoppel is equally available in either tribunal. The Supreme Court in *Wilkinson case*, 13 Wallace, 222, has also in a very able opinion sustained this position. That was an action at law on a life insurance policy, in which some of the answers to the written interrogatories in the application, made material to a risk, were proved to be untrue. Parol evidence was then introduced by the plaintiff, to show that his answers were in fact put in by the company's agent, on his own judgment, based on information derived from other sources than the statement of the applicant who refused to answer in these particulars, saying he knew nothing of the matters inquired of. The Court held the evidence admissible, and that the company was estopped by these acts of the agent, who in thus filling up the application was to be regarded as *their agent*, notwithstanding the application was signed by the applicant, and the answers purported on the face of the instrument to be his answers. The Court in their opinion, whilst ascribing to the rule of evidence in its just importance, yet affixed to it the proper limitation that it ought not to become the instrument of the very fraud it was intended to prevent, and after adverting to the facts of the case say "it is in precisely such cases as this, that Courts of law in modern times have introduced the doctrine of equitable estoppel, or as it is sometimes called estoppel *in pais*. The principle is that where one party has, by his representations or his conduct, induced the other party to a transaction to give him an advantage,

which it would be against equity and good conscience for him to assert, he would not in a Court of justice be permitted to avail himself of that advantage."

In dealing with the defense that the goods covered by the insurance in that case had been removed in violation of the provisions of the policy, which required a distinct agreement to their removal to be endorsed upon the policy, although the insured had notified the president of the defendant company that he intended to remove them, and had received his verbal assent to their removal, the Court said: "Would not the success of the defense operate a fraud upon the assured? We think it clear the company ought to be, and are estopped from making it. Whilst the law affords ample protection to these companies, as well as to individuals, against fraud, misrepresentations and breaches of warranty, it will not and ought not to help them to perpetrate frauds upon those with whom they make contracts, in which good faith on both sides, as well in their continuance, as origin, has always been regarded as a ruling consideration. Under the authority of these cases, the rejoinder demurred to, was clearly bad, as the company was estopped to rely upon the matters averred, if the allegations of the plaintiff's second replication was true.

2.   There is the following provision in the policy: "This entire policy unless otherwise provided by agreement or endorsed hereon, or added hereto, shall be void if the insured now has, or shall hereafter make, or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy," and under a subsequent clause in the policy the agent was given authority to deal with the question of other insurance. He was authorized to deal with any provision or condition of the policy which by its terms was required to be the subject of agreement indorsed thereon or added thereto, and the agreement as to prior or subsequent insurance *was one* which was by the express terms of the contract, required to be endorsed upon, or added to the policy.

The evidence shows that the policy was issued through M.

A. Record, the company's agent at Bel Air under the following circumstance: When issued on January 16th, 1906, a yellow slip was attached thereto containing the following words: "$1,500, other insurance permitted without notice unless required." It also had the 80 per cent clause attached. The policy was mailed to the plaintiff by the agent, Mr. Record, and was received by him on the 17th or 18th of January, 1906. At the time the policy was issued, the plaintiff had prior insurance upon the same goods in excess of fifteen hundred dollars and this fact he did not *at that time* make known to the defendant's agent, nor was it otherwise known to the agent, or to the company. This undisclosed insurance to an extent greater than the amount permitted in the slip attached rendered the policy void under an express provision in the policy, which we have quoted. The plaintiff was not satisfied with the policy. He testified that he went to Bel Air on the 29th of January, 1906, and told the agent, Mr. Record, that he was not satisfied with the policy, and that he then made the following change in the yellow slip pasted it on the policy, viz: he erased in red ink the figures 1,500 and submitted a large O for the small o in the word other, so that the yellow slip read "other insurance permitted without notice until required," and he also testified that on that occasion the agent tore out the 80 per cent clause which had been attached to the policy. He further testified as follows: "He tore off the clause and made the ink changes at the same time. I told him at that time I had more insurance than $1,500, and it would be absolutely no good to me to take a policy with that on it, and he changed it. I would not have accepted the policy in the form it was when I received it. I took it to Bel Air as soon as I was able to get there, and the change was then made. I told him I would not accept that with the $1,500 other insurance permitted because at that time I had a policy in my pocket for over $1,500, to the amount of $3,500, besides this policy. He said, "I will fix that," and he fixed it. He tore off this 80 per cent clause, that was after we discussed that 80 per cent clause, it was torn off before we dis-

cussed the other matter. The policy as thus modified and delivered to the plaintiff in the respect mentioned, read as follows:

$1000. On his stock of merchandise, consisting chiefly of clothing, dry goods, groceries, hats, caps, boots, shoes, rubber goods, flour, feed, and such other merchandise not more hazardous, all while contained in the one-story and attic, frame building; with felt roof, occupied as a general merchandise store and situate at Level P. O., Harford Co., Md. Other Insurance permitted without notice until required.

Mr. Record admitted that the plaintiff brought back the policy, and requested him to take off the 80 per cent clause, which he did. He did not deny that he made the other changes, but said that "to the best of his recollection and belief he did not make any alteration in the yellow slip by erasing the figures 1,500 in red ink, and substituting the large O in red ink for the small o in the word other. He would swear positively to this, but for the fact that the plaintiff has testified that he did make the alteration, and he does not want to swear that the plaintiff had sworn to an untruth."

We have no doubt about the power of the agent to make these changes. They were such as he was authorized to make under the terms of the policy, and the policy, issued and delivered under the circumstances mentioned; must be treated, under the authorities, as a valid contract of insurance, and was properly admitted in evidence, and the motion of the defendant to exclude it from the consideration of the jury was rightly overruled. And for the same reason the defendant's fifth prayer was properly refused. The policy provides that "the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy." It is insisted that under this provision the suit was prematurely brought. This provision is inserted for the exclusive benefit of the insurance company for the purpose primarily of giving it time to determine from such information as it may secure from the proof of loss submitted, or from other sources whether or not it will pay the claim. But the com-

pany may waive this provision, or it may deny liability under the policy.    In either of these events, the insured may bring suit without waiting for the expiration of the time limit.    But unless there has been a waiver, or a denial of liability, or unless the insurer is estopped to rely upon this provision, suit brought within the time limited cannot be maintained.    But whether there has been a waiver, an estoppel, or a repudiation of liability under the contract is a question to be ascertained from the conduct of the insurer and from all the facts and circumstances in the case.

The plaintiff is not *necessarily* required to show an *express* waiver, or an *express* denial of liability by the company as a condition precedent to the institution of the suit.    Both may be inferred from the facts in evidence; and where the evidence tends to show that the company had definitely determined not to pay the loss, or had waived the provision under consideration, or was estopped by its conduct to insist upon it, it would be error to declare as matter of law that the suit was prematurely brought.    In *Spring Garden Insurance Company* v. *Whayland*, 103 Md. 699, decided November 1st, 1906, we said:    "Good faith demands of an insurance company frank and open dealing with its policy holder, and if there be any withholding or failure to disclose an objection to preliminary proofs of loss beyond a reasonable time after they have been furnished, or if a refusal to recognize the obligation to pay a loss be placed on other and distinct grounds than an alleged insufficiency of, or defects in, the preliminary proofs, the company will be regarded as having waived all objections that could have been taken to such preliminary proofs."

There is abundant evidence in the record tending to show a waiver and also to show that the company had made up its mind not to pay this loss.    It imposed a condition upon the plaintiff which it knew he could not comply with.    It demanded that he furnish it a full copy of a contract showing "the amount of other insurance permitted without notice until required."    It knew the plaintiff had no such policy, and it is evident that it had decided not to pay until a copy of such

policy was produced.   A careful consideration of the record has satisfied us that ample evidence was offered tending to show a refusal by the defendant to pay this loss, it would, therefore, have been error for the Court to have ruled as matter of law that the suit was prematurely brought, and, having held in an earlier part of this opinion, that the policy was valid, it would also have been error to have granted the defendant's first and second prayers; the first prayer sought to withdraw the case from the jury upon the ground that the plaintiff had offered no evidence legally sufficient upon which he could recover under the pleadings in evidence, and the second prayer, which relates to the premature bringing of the suit, entirely ignores all the evidence tending to show that the defendant had repudiated its responsibility under the policy.

The defendant's seventh prayer, which was refused, relates to the Iron Safe Clause, but, as there is an agreement in the record that no question arising under that clause shall be considered in this case, this prayer will not be discussed.

We have no doubt that the suit was properly brought under the Act of 1886, ch. 184.   The case of the *Orient Mutual Insurance Company* v. *Andrews and Locke*, 66 Md. 371, is conclusive in favor of the plaintiff's right to sue under that Act.   Finding no error in the rulings, the judgment will be affirmed.

*Judgment affirmed with costs above and below.*