# MARY E. KEINER v. COMMERCE TRUST COMPANY.

## [No. 43, October Term, 1927.]

*Decided December 8th, 1927.*

The cause was argued before BOND, C. J., PATTISON, AD-KINS, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*W. Leroy Ortel* and *J. Milton Lyell,* with whom was *T. Bayard Williams* on the brief, for the appellant.

*Horace T. Smith,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On or about November 13th, 1926, the Cardwell-Fisher Fixture Company, a Maryland corporation, engaged in manufacturing, owed the Commerce Trust Company $12,000 on a note which had matured on November 3rd, 1926, and had been protested, $5,000 on an overdue demand note, $69.93 on an overdraft, and $413.20 balance on a note for $2,500. It was without cash assets, and it needed about $1,680 for its payroll. On that day Thomas L. Cardwell, president of the corporation, approached Walter B. Bahn, vice-president of

the trust company, who represented it in the transaction herein referred to, and asked him if the trust company would discount a note of the Spetzler Drug Company for $3,115. Bahn appears to have declined to advise that, unless the trust company were given better security for its loans. As a result of negotiations between Bahn and Cardwell, the following plan was agreed upon between them. The trust company was to take a demand note for $5,500, a new note for $10,000, take an assignment of $4,500 of accounts receivable, discount the Spetzler note for $3,115, and credit the fixture company with $12,000 to retire the protested note, $5,000 to retire the demand note, $413.20 to pay the balance due on the $2,500 note, and cash a check for $1,680 drawn to the pay roll order. The consummation of that plan depended however upon the endorsement of the new $10,000 note by Conrad Keiner and Mary E. Keiner. At that time Mrs. Keiner was not on any of the overdue paper of the fixture company held by the trust company, and it may be assumed that it availed itself of the opportunity presented by the company's need for ready money to change its loans, so that Mrs. Keiner would be individually liable for at least $10,000, in which event it could reasonably expect to collect at least that amount in the event that the fixture company became unable to meet its obligations.

Mr. and Mrs. Keiner together held about $15,000 of the fixture company's stock, most of which had been purchased apparently with her money. She had been for some thirty years engaged in the retail notion and dry goods business in Canton, a business which she eventually sold for $30,000. Her husband had been a letter carrier, and, a few years after his wife had sold her business, his health began to fail, and he felt that he would like to resign his position and invest in some business, so that he could have an "easier" place, and in some way he and his wife were induced to invest in the Cardwell-Fisher Fixture Company, which was engaged in the manufacture of store, office, and bank fixtures, show cases, etc. He was eventually made vice-president and director of the company, and appears to have been employed

by it in some minor capacity, for which he received forty dollars a week. It appears to have been fairly successful for a time, but towards the end of 1926 its business was failing, its assets were diminishing, its liabilities were increasing, and it was becoming more and more difficult for it to secure credit, and meet its obligations as they became due. It had borrowed heavily from the trust company and that company was obviously becoming uneasy about its security. It was under these circumstances that the plan referred to above was proposed by the trust company, and Mr. Cardwell, president of the fixture company, in order to carry it out, undertook to secure the endorsement of Mrs. Keiner. He failed, however, and reported his failure to Bahn. After that he and Bahn together went to see Mrs. Keiner, and at that interview she, with the fixture company, her husband, and Mr. and Mrs. Cardwell, signed a note for $10,000 payable to the trust company on demand, which contained this power of attorney: "And the undersigned does hereby authorize any attorney of record to appear on his behalf at any time after the date hereof, in any court of record, and confess judgment against the undersigned for the face of this note with costs and 10% collection fee." Demand was made, but the note was not paid, and thereafter, on December 22nd, 1926, a confessed judgment based on the power contained in the note was entered against the makers thereof for $10,000, the principal sum, and $1,000 counsel fees. On January 21st, 1927, Mrs. Keiner filed a motion to strike that judgment out as against her, on the grounds, (1) that it was procured by fraud, (2) that it was procured by duress, and (3) that it was without consideration. The plaintiff answered the motion, it was set down for a hearing, testimony was taken, and thereafter the court appears to have overruled the motion, although the record contains no formal order to that effect. From that action the present appeal was taken.

Before reviewing the evidence relating to the appellant's contention, we will refer to the position which she has taken

with reference to the powers, functions, and duties of the trial court in dealing with motions to strike out judgments in cases of this character. As we understand it, it is that the motion should have been granted if it was supported by any evidence legally sufficient to establish the defendant's contention. In other words, that if the evidence offered in connection with the issues of fraud, duress, or failure of consideration was conflicting, nevertheless, if it was legally sufficient to support the issue, the court was bound to strike the judgment out and submit the issues to a jury. No authority has been cited in support of that proposition, and we have been able to discover none.

A judgment by confession possesses all the incidents, is supported by the same presumptions, and is entitled to the same faith and credit, as any other judgment (*Freeman on Judgments,* par. 1337), and that is so whether the confession is by the defendant in person or by another with his consent. *Ibid.* But while that is true, the widespread and general practice of embodying, in promissory notes, warrants of attorney authorizing a confession of judgment for the amount thereof, together with counsel fees, lends itself too readily to fraud and abuse, and in this state at least such judgments "are freely stricken out on motion to let in defenses." *Phillips v. Taylor,* 148 Md. 162. And although such a motion "must be supported by satisfactory proof of conditions which make such action necessary to serve the ends of justice" (*Wisner v. Reeside,* 139 Md. 223), the court in dealing with it "should be very careful to see that no improper advantage has been taken of the maker of such note in entering judgment" *International Harvester Co. v. Neuhauser,* 128 Md. 181.

Necessarily, one making the motion assumes the burden of supporting the facts alleged in it, and as to all matters not going to the merits of the controversy, such as surprise or deceit in the entry of the judgment itself, he must prove such facts by a fair preponderance of the evidence. But as to defenses going to the merits of the claim upon which the

judgment rests, a different rule prevails. In such cases, if the evidence adduced in support of the motion is sufficient to persuade the fair and reasoned judgment of an ordinary man that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the defendant should be deemed to have met the burden of showing that he has a meritorious defence. In other words, if the evidence is such that persons of ordinary judgment and prudence could honestly and fairly draw different inferences from it, one favoring the plaintiff and the other the defendant, the court should not itself decide that conflict, but should submit it to a jury. And while the rule thus stated is not universally approved, it seems to be supported by the weight of authority, is consistent with justice and equity, and is in harmony with the decisions of this court. "Courts of law exercise an equita· ble jurisdiction over judgments entered by confession upon notes and warrants of attorney, and it is necessary to justice that they should liberally exercise that jurisdiction, and may therefore, on application of the defendant, vacate them and permit him to make a defense on the merits, provided the proper showing of a meritorious defense is made " *Freeman on Judgments,* par. 1340. 34 *C. J.* 415; *Wisner v. Reeside, supra; International Harvester Co. v. Neuhauser, supra; Phillips v. Taylor, supra.*

Having these principles in mind, we will now consider the evidence relating to the reasons upon which appellant relies in her motion to strike out the judgment. The first and third reasons, namely duress and failure of consideration, may be briefly disposed of. There is not the slightest evidence that any duress was practiced upon Mrs. Keiner. Bahn and Cardwell did go to her home to induce her to sign the $10,000 note, but they treated her courteously, they used no threats, and, although they asked her to sign it, Bahn voluntarily suggested that she consider the matter alone with her husband, and during that conference they withdrew from the room, and did not return until she called them. The only compulsion affecting Mrs. Keiner was that exercised by the condition of the company in which her money and that of her hubsand

was invested, and surely Bahn was not responsible for that. Nor is there any merit in the contention that there was no consideration for her execution of the note. The fixture company owed its employees over $1,600, and it had no funds with which to pay them. She believed, and it appears to have been true, that unless she did sign the note the trust company would advance no "new" money. She signed the note and the trust company advanced money for the pay roll. She was an accommodation maker, and the money advanced by the payee was advanced in part at least upon her credit (Code, art. 13, sec. 48), which afforded an adequate consideration for her act.

So that the case finally turns on whether the appellant showed, in accordance with the rule stated above, that her signature to the note was procured by fraudulent misrepresentations of material facts made to her by Bahn, which were false and known by him to be false, but which she believed to be true, and upon which she relied.

She testified that Cardwell first brought the note to her on Friday evening, but that she failed to sign it then, and that the next day he returned with Bahn; that at that time she was worn out, upset and nervous as the result of the recent death of her daughter, and excited by the visit, and that she again told Mr. Bahn, "I wouldn't sign this note," and Mr. Bahn said, "There is nothing to it, you needn't worry about it, everything is all right, we only want additional security." "I said, 'Why want me at this time, my husband has been going along, why drag me in.' Mr. Bahn said, 'It will be a shame to let the Cardwell-Fisher Fixture Company go under; they have built up a wonderful reputation and they are doing so well. In the near future money will be coming into you plentifully. I again told—I again said, 'If the factory is in such good condition as that, why do you want me.' He said, 'We must have additional security.' So I thought over it again for a little while—it got on my nerves—they said the men wouldn't get any pay at the factory. Then I went over and said: 'Well, I guess there

is nothing left for me to do,' and I signed that note. * * * After I signed the note I guess they were satisfied, and Mr. Bahn called up the factory and told them to give them sixteen hundred dollars to pay the payroll. * * * When Mr. Bahn was in my home he was walking around from one place to the other. He didn't say anything more than just keep impressing on my mind it was nothing, they only wanted additional security and everything—well, as I would figure it, in first class condition; the factory was in splendid order and the money would be coming in and everything was all right. * * * He said that the factory was in splendid condition, and it would be a shame to see anything happen to it now, because the Cardwell-Fisher Company had worked up a wonderful reputation and they were in splendid shape —as much as to say they were in splendid shape then. He said, 'You don't have to worry about this, all we want is this note renewed'; he said, 'You don't have to worry about it, everything is all right'; he said, 'Why worry about it?' Of course I didn't know what condition the factory was in."

Conrad Keiner testified that Bahn said to Mrs. Keiner, "there was nothing to it, only renewal of a note and that the business was in good condition and Mr. Cardwell was making a wonderful reputation; that the firm and the notes, everything will come out all right, make money. * * * I said, 'I thought I was going to get rid of this note.' Mr. Bahn said, 'Well, Mr. Cardwell is going to have somebody in your place and Mr. Cardwell verified that and said he was going away that night and see Mr. Crawford, and then Mr. Bahn went to sit over by the door and my wife was by the telephone. * * * Q. What did he say about the business? A. He said he was building up a fine trade and knows he will make money. Q. Mr. Bahn said that? A. Mr. Bahn said that, and the customers are well pleased with the work and he is making a reputation for the firm. Q. Then what followed? A. After that assurance of some one taking my place, Mrs. Keiner signed it.' " Bahn positively denied the statements attributed to him by Mr. and Mrs. Keiner, and Cardwell, who was present, did not remember much of what was said,

but said he did hear Bahn say that the business was in good shape. So that of the four persons present at that interview, the only witness not directly interested corroborated Mrs. Keiner in part, and, of the others, two said that Bahn did make the statements attributed to him, and one that he did not. This evidence was, in our opinion, for the purpose of the motion, sufficient to support the inference that he did make them.

The next inquiry is whether these statements were false when made, and known by Bahn at the time to be false. That they were false in fact is, we think, fairly inferrible from the evidence. It is undisputed that contracts which the company expected to receive had not materialized, it was practically shut down, only a few men were working there, its note for $12,000 was still unpaid, nearly two weeks after it had been protested, the current wages of its workmen were unpaid and it was without funds from which to pay them, it was overdrawn at the bank, it owed the bank on other overdue notes, it had assigned to the bank $4,500 of its accounts receivable, which were practically all it had, and it had no reasonable grounds to believe that its condition would improve.

The next question is whether Bahn knew these statements to be false, when he made them. Whatever may be the rule elsewhere, it is the established law of this state that, to support a charge of fraud based upon misrepresentation, "knowledge of the falsity by the party making the representation" must be shown. *Reynolds v. Evans,* 123 Md. 372; *Boulden v. Stillwell,* 100 Md. 543. Or, as stated in the case last cited: "The foundation of the action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation, believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit. There must be either knowledge of the falsity of the representation, or such reckless indifference to truth in making it as is held equivalent to actual knowledge." While the court in that case was discussing fraud in connection with an action of deceit, its language is equally applicable to the

fraud charged in this case. But while *scienter* must be proved, it may be shown by proof of actual knowledge or of "facts and circumstances which impute knowledge." *Reynolds v. Evans, supra.*

The proof shows that on November 6th, 1926, Bahn and Edwin E. Kershaw, treasurer of the trust company, went over the books of the fixture company, but while they had complete access to the books, they both said that they were in such shape that they could gain no reliable information from them. Cardwell, however, testified that upon the strength of their examination of the books they asked for a reduction of the fixture company's line of discount. And although he denied that the company was in a shaky condition on November 1st, he gave no facts to justify his optimism, and said that between November 1st and the time the company went in the hands of a receiver, on December 1st, 1926, it was in an unsatisfactory condition, mainly because contracts which they expected did not materialize. He also said that Bahn seemed to be familiar with the facts that work was not coming in as they expected, and suggested their laying off men. Bahn testified that a statement furnished by the company in February showed a net worth of $110,000, whereas one furnished immediately prior to the transaction showed a net worth of $80,000 to $82,000, and that the difference was explained by Cardwell on the ground that they had taken no inventory, and that he accepted that explanation; that when he went over the books, Miller or Cardwell told him the company had outstanding accounts receivable amounting to about $40,000, and that what he heard from Cardwell and Miller, plus the inventory of what was on hand, led him to believe that the statement of the net worth of the company was correct. He further said that Cardwell, at the interview at the Keiner home, said that he expected to interest a Mr. Crawford in the company, was reasonably sure he would invest forty or fifty thousand dollars in it; that he was not familiar with the affairs of the company, had never suggested laying off men, and had nothing to do with its operation. Kershaw testified that, while he could learn nothing from its books, he believed

from what Cardwell told him that the company was in "pretty good shape." In connection with this testimony, it must be remembered that Bahn knew the fixture company had allowed its $12,000 note to go to protest, that other notes which it owed the bank were overdue and unpaid, that it was overdrawn, that its pay roll was due, and that it was without funds to pay it, and that the bank had taken an assignment of practically all of its accounts receivable amounting to $4,500, and a note of the Spetzler Drug Company for $3,115, and that with the additional security it was unwilling to advance money for the factory pay roll unless Mrs. Keiner endorsed a $10,000 note. Whilst an inference might be drawn from that testimony favorable to the appellee, we cannot say that the fair and reasoned judgment of an ordinary man of reasonable care and prudence could not infer from it that Bahn, when he made the statements attributed to him by Mrs. Keiner, knew that they were false. And in our opinion therefore the appellant met the burden placed upon her with respect to that issue.

The only remaining question is whether Mrs. Keiner relied upon the statements attributed to Bahn to such an extent that without them she would not have signed the note. Whilst she did not in so many words say she did, and whilst it is true that she knew that the company owed her money, and it appears that she was a stockholder in it and attended stockholders' meetings, and while the evidence indicates too that she knew that it had no money to meets its pay roll, and while there is some evidence tending to show that the thing which really induced her to sign the note was the necessity of securing money for the pay roll, nevertheless that evidence must be considered in connection with the undisputed fact that she had positively, against the persistent inportunities of both Bahn and Cardwell, refused to sign the note until Bahn had assured her that she ran no risk thereby, because the company was in splendid shape, and with the further fact that she could have raised the money for the pay roll on her own security without guaranteeing the debt of a practically insolvent corporation, and the improbability that,

in view of her very decided refusal to sign the note, she would finally have done so unless she had believed the statements attributed to Bahn that she thereby incurred no risk. In the opinion of a majority of the court, considering all the evidence in the case, the defendant met the burden which she assumed of showing, for the purposes of the motion, that there was a substantial ground for her contention that her signature to the note was induced by Bahn's statements to her. Accepting that view, it follows that in our opinion the motion to strike out the judgment should have been granted.

Ther are four exceptions (one unsigned) to rulings upon questions of evidence. In respect to them it is sufficient to say that after careful examination we have discovered no reversible error in these rulings.

> *Order appealed from reversed, and cause remanded for further proceedings in accordance with the views expressed in this opinion.*

Bond, C. J., Parke, and Sloan, JJ., dissent.

On motion for modification of order.

Inasmuch as this case was remanded for further proceedings, it is within the power of the trial court to impose such terms or conditions upon its act in striking out the judgment as may be proper and necessary to protect the rights of the parties, and it is therefore unnecessary to modify the order in this case.

*Filed February 17th, 1928.*