720 A.2d 1188

The SECOND SHIFT, INC. et al.

v.

RESERVOIR CAPITAL CORPORATION.

No. 1199, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Dec. 1, 1998.

John H. Doud, III (Fedder and Garten, P.A., on the brief), Baltimore, for Appellants.

Steven N. Leitess (Aryeh E. Stein and Leitess, Leitess & Friedberg, P.C., on the brief), Baltimore, for Appellee.

Argued before HARRELL and BYRNES, JJ., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

Appellants, The Second Shift, Inc. d/b/a Jobsite Staffing, and Robert B. Renner (hereinafter collectively, Second Shift), appeal from an order of the Circuit Court for Baltimore County denying their motion to vacate a judgment by confession entered against them and in favor of appellee, Reservoir Capital Corporation (Reservoir).

## *FACTS*

In 1995, Second Shift entered into a written factoring agreement with Reservoir, and Robert Renner executed a guarantee of the obligations of Second Shift. Written amendments were entered into in March and June of 1996. The essence of the arrangement was to allow Second Shift to obtain promptly from Reservoir a discounted amount of certain of Second Shift's accounts receivable.

The agreement between the parties provided that Second Shift would offer selected accounts receivable to Reservoir, which Reservoir could accept or refuse. Reservoir would pay to Second Shift seventy-five percent of the balance due on those accounts accepted (amended in June 1996 to eighty percent), and the debtor would be notified to make future payments to a designated account controlled by Reservoir. If Second Shift received any payment on an assigned account, it held that payment in trust for Reservoir and was obligated to remit it immediately to Reservoir.

Second Shift further agreed to pay a processing fee to Reservoir on all assigned accounts, the amount of which varied according to the age of the account, as fixed by a schedule attached to the agreement. Second Shift obligated itself to provide a minimum of $500,000 per month in acceptable accounts and agreed to pay the processing fees on not less than that amount, even if the acceptable accounts fell below the minimum guarantee. The volume was computed on a rolling three-month average.[1] When Reservoir received a payment, it was obligated to pay to Second Shift the difference, if any, between the payment and the assigned price of that account, less all unpaid processing fees. If the account on which payment was made was part of a group of accounts for which Reservoir had paid an aggregate price, payment to Second Shift would be made only on the aggregate differential, less all processing fees on the aggregate accounts.

---

1. By the amendment of June 1996, the minimum was reduced to $150,000 and the volume was computed on a rolling six-month average.

Second Shift also agreed to repurchase, upon demand of Reservoir, any account not paid when due, and to pay all collection costs incurred by Reservoir in efforts to enforce payment of assigned accounts. Reservoir was authorized at any time to charge Second Shift's account with the amount of Second Shift's obligations, including collection costs.

The agreement provided that Reservoir could declare a default upon the happening of certain enumerated events, including default in payment of any of Second Shift's obligations or failure to perform any promise contained in the agreement. Upon the occurrence of a default, Reservoir was authorized to obtain a confessed judgment for the amount of Second Shift's obligations then outstanding, together with attorneys' fees of ten percent and costs.

On August 5, 1996, Reservoir filed a complaint for confession of judgment, together with copies of the original agreement and first amendment, and an affidavit of Jeffrey Ignall, Assistant Vice President of Portfolio Management and Underwriting for Reservoir. The complaint alleged that Second Shift had "defaulted on its obligations under the Master Factoring Agreement, as amended, by diverting accounts receivable proceeds of Reservoir and by failing, despite demand, to pay to Reservoir all sums due Reservoir under the Master Factoring Agreement, as amended." The complaint also alleged that "as of July 15, 1996, [Second Shift] owes Reservoir, under the terms of the Master Factoring Agreement, the total amount of $205,379.69 plus attorneys' fees of $20,537.96, costs and expenses."

The affidavit of Mr. Ignall repeated the principal allegations of the complaint, and the allegations of a default. With respect to the amount then due under the agreement, the affidavit stated, without elaboration:

> As of July 15, 1996, [Second Shift] owes Reservoir, under the terms of the Master Factoring Agreement, the total amount of $205,379.69 plus attorneys' fees of $20,537.96, costs and expenses.

The clerk entered a confessed judgment for $205,379.69 plus attorneys' fees of $20,537.96 and costs, and issued notices to Second Shift and Renner.

Second Shift filed a timely motion to vacate the confessed judgment, and thereafter filed an amended motion, an affidavit of Robert Renner, and exhibits. Second Shift argued that the confessed judgment was improperly entered because the claim was not for a liquidated amount, that Second Shift was not in default, that it did not owe the amounts claimed, that it was entitled to set-offs and credits, and that Reservoir had not performed in accordance with the requirements of the agreement.

Reservoir responded by contending that the amount in controversy was a liquidated amount because arithmetical computation made in accordance with the agreement could produce a sum certain. It contended that the amount it had represented was in fact due, and that even if it was incorrect in any respect or Second Shift was found to be entitled to set-offs or credits, the judgment should not be vacated but, rather, opened to receive testimony on any disputed amounts, while still preserving to Reservoir its lien of judgment.

A hearing was held on March 31, 1997, after which the trial court denied Second Shift's motion to vacate the confessed judgment. This appeal followed.

### DISCUSSION

Maryland Rule 2–611 provides in pertinent part as follows:

(a) *Entry of judgment.*—Judgment by confession shall be entered by the clerk upon the filing of a complaint, the original or a photocopy of the written instrument authorizing the confession of judgment for a liquidated amount, and an affidavit specifying the amount due and stating the address of the defendant or that the whereabouts of the defendant are unknown to the plaintiff.

\* \* \* \*

(c) *Motion by defendant.*—The defendant may move to open, modify, or vacate the judgment within the time prescribed for answering by sections (a) and (b) of Rule 2–321. The motion shall state the legal and factual basis for the defense to the claim.

(d) *Disposition of motion.*—If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action, the court shall order the judgment by confession opened, modified, or vacated and permit the defendant to file a responsive pleading.

This Court reviewed certain basic concepts of the confessed judgment law of this State in *Garliss v. Key Federal,* 97 Md.App. 96, 627 A.2d 64 (1993).

> Judgments by confession are not favored in Maryland. See *Alger Petroleum, Inc. v. Spedalere,* 83 Md.App. 66, 573 A.2d 423, *cert. denied,* 320 Md. 800, 580 A.2d 219 (1990), because Maryland courts have long recognized that the practice of including in a promissory note a provision authorizing confession of judgment lends itself far too readily to fraud and abuse. *Keiner v. Commerce Trust Co.,* 154 Md. 366, 141 A. 121 (1927). Thus, judgments by confession are freely stricken 'on motion to let in defenses.' *Id.,* 154 Md. at 370 [141 A. 121], quoting *Phillips v. Taylor,* 148 Md. 157, 163, 129 A. 18 (1925).
>
> Although motions to vacate or strike judgments by confession must be supported by satisfactory evidence of defenses supporting the vacation of such judgments, trial judges must assure themselves that improper advantage has not been taken of the maker of the note. *Remsburg v. Baker,* 212 Md. 465, 129 A.2d 687 (1957).

*Id.* at 103–04, 627 A.2d 64.

The requirement of Rule 2–611 that confessed judgment be entered only for a liquidated amount is not new. In 3 Freeman, *Law of Judgments,* § 1336 (1925), the author states:

> Judgment entered by the clerk in vacation must be strictly in accordance with the confession or cognovit, as to the

amount; it cannot, therefore, be entered for the amount claimed in the declaration where the cognovit does not confess that amount.

The law as to what constitutes a liquidated amount has developed not only in confessed judgment cases, but also in cases involving attachment before judgment, where the requirement for a liquidated amount was the same. Thus, in *Orient Mutual Ins. Co. v. Andrews,* 66 Md. 371, 7 A. 693 (1887), the Court of Appeals, referring to the law of attachments, said:

> [T]he general rule is, that unliquidated damages cannot be recovered by attachment, unless the contract itself affords a certain measure or standard for determining the amount of the damages, because in such case the amount of indebtedness cannot be averred by affidavit.... The true test therefore is, whether the claim can be sworn to.

*Id.* at 374, 7 A. 693 (citations omitted). And, in *Dirickson v. Showell,* 79 Md. 49, 28 A. 896 (1894), the Court of Appeals said:

> If the contract itself fixes the amount due, or affords by its terms a certain measure for ascertaining that amount, an attachment will lie if the necessary jurisdictional facts appear; and the test is whether the contract furnishes a standard by which the amount of the indebtedness or damages may be determined with sufficient certainty to permit the plaintiff to verify his claim by affidavit.

*Id.* at 52–53, 28 A. 896 (citations omitted). Still later, in *Eastover Co. v. All Metal Fabr.,* 221 Md. 428, 158 A.2d 89 (1960), Judge Levine for the Court reviewed the relevant authorities.

> Since there was no dispute as to prices of material or hours of labor and since the contract itself provided the basis of computation to be applied to those undisputed facts, we think that the claim was sufficiently certain to constitute a liquidated claim. See *Wilson v. Wilson,* 8 Gill 192; *Dirickson v. Showell,* 79 Md. 49, 52–53, 28 A. 896; *Williams v. Jones,* 38 Md. 555; all attachment cases. See also 6

Corbin, *Contracts,* § 1290. 1 Williston, *Contracts* (3d ed.) § 128, defines an unliquidated claim as 'one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law.' Cf. *Blick v. Mercantile Trust & Deposit Co.,* 113 Md. 487, 491, 77 A. 844, in which a number of cases are reviewed and in which the test of whether or not a claim is liquidated so that an attachment will lie is thus stated: 'In each case the question is whether the contract itself fixes the amount or furnishes a standard by which the amount may be certainly determined. If it does, the attachment will lie. If it does not, it will not lie.' (In the *Blick* case that test was found not to have been met.) Cf. also 2 Poe, *Pleading and Practice* (Tiffany's ed.) § 415, dealing with a similar problem under the Speedy Judgment Acts. See also *Frush v. Brooks,* 204 Md. 315, 104 A.2d 624, with regard to the sufficiency of an affidavit in support of a motion for summary judgment under Rule 610 of the Maryland Rules, which has superceded the former Speedy Judgment Acts. *Id.* at 433, 158 A.2d 89.

▇ From the authorities and from the language of Rule 2–611, we conclude that if the terms of the cognovit agreement furnish the mechanics for arithmetical computation of a sum certain claimed to be due, and the required affidavit provides the factual basis for, and the actual application of, the arithmetical computation that produces a sum certain, the requirement of a liquidated amount may be met. Thus, a cognovit note may be for a certain face amount, and provide for periodic payments of principal and an agreed amount of interest, and by combining the terms of the note with an affidavit detailing the dates and amounts of payments made and a computation of interest due, a judgment may be confessed for a liquidated amount that differs from the face amount of the note. The affidavit, then, becomes a critical part of the confessed judgment process. See *Pacific Mtg. & Inv. v. Wienecke,* 50 Md.App. 128, 436 A.2d 499 (1981) (absence of affidavit invalidates confessed judgment). The terms of a cognovit agreement may furnish the skeleton, but it is the

affidavit that must supply the flesh and allow the arithmetical computation to be made.

 Particularly in a financial arrangement such as the one before us, where there are multiple and changing factors that determine the sum that may be due at any given moment, the need for an affidavit supplying the details of the computation must be furnished. Without a detailed affidavit, neither the clerk nor the alleged debtor can know how the computation was made that resulted in the figure claimed. A defendant in the position of Second Shift cannot provide specific denials or defenses because it cannot possibly know how Reservoir computed the amount it claims to be due.

 Although it stretches the concept of a "liquidated amount" to its outer boundaries, we will assume that this agreement, with all its computational complexities, could be made the subject of a confessed judgment. That result could be accomplished, however, only if the requisite affidavit provided sufficient factual detail to demonstrate that the sum claimed was in fact a liquidated amount arrived at by arithmetical computation made in accordance with the terms of the agreement. Here, the affidavit contained nothing more than the bald, conclusory statement of the affiant that a particular sum was due.

 The amount of detail required in an affidavit in support of a request for confessed judgment will vary with the nature of the cognovit agreement. If a demand note for a sum certain without interest is involved, the affidavit need only state that demand was made and no payments have been made, and that the principal sum is due and owing. As the complexity of the cognovit instrument increases, so also will the requirements for particulars in the affidavit.

The affidavit in this case did not demonstrate that this claim was for a liquidated amount computed in accordance with the terms of the agreement, and the pleadings as a whole did not demonstrate that Reservoir was entitled to the entry of a confessed judgment.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE COUNTY REVERSED; CASE REMANDED FOR ENTRY OF AN ORDER GRANTING APPELLANTS' MOTION TO VACATE THE CONFESSED JUDGMENT, AND FOR FURTHER PROCEEDINGS.

APPELLEE TO PAY COSTS.